(No. 36246.— ▮▮▮▮▮▮▮▮)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* THOMAS E. KEMP, Plaintiff in Error.

*Opinion filed November 26, 1963.*

FRANCOIS H. JAS, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and ELMER C. KISSANE and WILLIAM J. MARTIN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Defendant was convicted of robbery and sentenced to the penitentiary for a minimum of 19 years and a maximum of 20 years. He assigns as error the admission into evidence of a confession which he claims was not voluntarily given, improper instructions to the jury, and denial of his motion for new trial on the argument of the prosecutor to the jury.

Defendant confessed after having been held in custody some 28 hours. He does not make any contention that the questioning to which he was subjected was itself sufficiently coercive or too extended. The defendant complains of specific acts.

Defendant contends that on May 26, when he was arrested, and again on May 27, when he confessed, he was severely beaten and cajoled by three police officers in the 7th District Police Station in Chicago (called the Woodlawn Station) and that he was made promises of a lighter treatment if he would confess and that in order to avoid further bodily injury and in consideration for not being indicted under the Habitual Criminal Act, he signed the confession, which he claims he did not read.

Defendant testified that on May 26, 1958, he was arrested at 12:30 P.M. and taken to the Woodlawn Police Station; he was put in the lockup until about 3:00 P.M.

that day and again he was taken to the second floor and interrogated by three officers. Officer George Kobar interrogated him. At no time did Kobar hit him, but he testified that at one point one of the others said he did not believe him and hit him in the stomach. He refused to sign a confession. About an hour later, he again was examined by the same three officers. He testified he was struck by them several times with their fists and although it was suggested he confess, he refused to do so. The next morning the same three officers questioned him. He says that officer Kobar told him he would give him a break if he would sign the confession. Thereafter, the other two officers struck him in the neck and knocked him over. He was sent back downstairs until evening. In the evening he was brought up again, interrogated by the same three men and again hit when he denied the crime. The confession was handed him all written up and he says he then signed it.

He was in three show-ups. The first one was fifteen or twenty minutes after he arrived at the station where he was identified by Robert Willin. A second show-up was held the evening of the 26th at about 6:00 P.M. where the robbery victim, Reynold Mitchell, identified him out of five men.

At the preliminary hearing on the petition of defendant to suppress the confession, after defendant's testimony of the alleged violence to him, the prosecution called as witnesses three police officers. The first one, George Kobar, testified that he interrogated defendant at about 11:30 o'clock on May 27 at the time of the confession and that officers Richard Dickson and Walter McCarthy were present. All of these officers testified they did not strike defendant or see anyone strike him. Kobar said he made no promises to defendant and heard no one make any promises to him. Kobar said he told defendant that he had nothing going for him, that he had a record of previous convictions, and that he might just as well confess. After the State's testimony, defendant resumed the stand and repeated that

no typing was done in the interrogating room, that there were other unidentified officers present who beat him and that he signed without having read the statement. The court denied the motion to suppress.

Officer George Kobar testified that he first saw defendant at about 1:30 P.M. on May 26 at the station and at that time defendant made an oral statement to him that he committed the crime in question. At 11:20 A.M., the following day, Kobar says he took the confession in the presence of officers McCarthy and Dickson. No one else was present. Dickson typed the questions and answers of the confession to the robbery in the instant case.

As we stated in *People* v. *Sims,* 21 Ill.2d 425, the question of the competency of a confession is for the trial court alone to decide and, in making its decision, the court is not required to be convinced of its voluntary character beyond a reasonable doubt. Here, as in that case, the evidence was conflicting and the testimony of defendant was controverted by that of the State's witnesses. Under such circumstances, we here cannot say the decision on the admissibility of the confession was against the manifest weight of the evidence.

The principle was clearly stated in *People* v. *Sims,* which reviewed a long line of Illinois cases, that there must be called as witnesses, or their absence explained, those persons whose testimony would be material on the issue of the voluntary nature of the confession. Defendant contends there were two other unidentified police officers who beat him at the station. Nowhere is this testimony corroborated. The trial judge was in the exercise of a justified discretion in admitting the confession. The record does not support the claim of physical brutality or of promises of leniency.

Defendant contends there was error in the refusal to give his instruction No. 5 which was: "The Court instructs the jury that they must believe and be satisfied from the evidence adduced in the case that the alleged confession herein was voluntarily made; that is to say, that it was made with-

out the defendant being influenced or coerced thereunto by any means, and if the jury have a reasonable doubt as to how the confession was obtained it is their sworn duty to return a verdict of not guilty." This instruction was properly rejected for it made the jury the arbiters of the voluntariness and hence the admissibility of the confession. It is the function of the trial judge to determine its admissibility and the jury can only determine the weight to be given it. Further, it appears that a proper instruction was tendered by the State and given on this confession.

Defendant complains that prejudicial error occurred in the prosecution's closing argument. These all arise from comments made by the State on defendant's evidence. No objections were made at the time to these remarks and they did not constitute error. The prosecution may draw all legitimate inferences it can from the evidence. *People* v. *Heidman*, 11 Ill.2d 501, 511.

The confession, taken together with the positive identification of defendant by his alleged victim, proved him guilty beyond a reasonable doubt. The identification was positive and sufficient to convict even though contradicted by the accused. *People* v. *Germany*, 28 Ill.2d 154; *People* v. *Cox*, 22 Ill.2d 534.

The jury was faced with conflicting testimony which it no doubt resolved by determining the credibility of the witnesses. Defendant testified he had served two terms in the penitentiary. He said he pleaded guilty to a robbery charge when he was 17. The chief clerk of the criminal court clerk's office testified his official records showed he pleaded not guilty and was 19 at the time. His testimony was impeached by the record and the variances in the testimony. The jury well must have chosen to discredit his testimony. There is nothing in the record justifying a new trial. The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*