## THOMAS McCOY *v.* STATE OF MARYLAND

[No. 129, September Term, 1969.]

*Decided November 17, 1969.*

128

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Edward L. Coleman* (*Donald F. Rogers* on brief) for appellant.

*Donald Needle, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *James B. Dudley, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

PER CURIAM.

Thomas McCoy, the appellant, jointly indicted with

Albert James Matthews, Edward Powers and Dennis R. Willson,[1] was separately tried before a jury in the Criminal Court of Baltimore. He was found guilty of murder in the first degree without capital punishment and robbery with a deadly weapon. Consecutive sentences of life imprisonment and 15 years respectively were imposed.

The appellant contends that a confession obtained from him during a custodial interrogation without the presence of an attorney was improperly admitted in evidence because the circumstances precluded him from knowingly and intelligently waiving his rights.

There was evidence before the court from which it could find preliminarily *prima facie* and before the jury from which they could find ultimately beyond a reasonable doubt that the appellant was apprised of the complete panoply of warnings as required under *Miranda v. Arizona,* 384 U. S. 436 and that the confession was voluntary in the traditional sense, that is that it was not the product of force, violence, threats, inducements or promises. See *Barnhart v. State,* 5 Md. App. 222. The testimony of the three officers, who, it appeared, were the only officers who had contact with the appellant from the time of his arrest to the time the confession was obtained, a period of about two hours, was sufficient to support these findings and the appellant signed a form, prior to interrogation, specifically setting out the *Miranda* warnings. The arguments of the appellant with respect to the voluntariness of the confession do not compel findings to the contrary. It was not necessary that he be apprised of his rights "at the time of his arrest in his home where he could have had the assistance of his parents or

---

1. Matthews was found guilty by a jury in the Criminal Court of Baltimore of murder in the first degree and robbery with a deadly weapon and given consecutive sentences of life imprisonment and 15 years respectively. Powers was found guilty of murder in the first degree at a court trial in the Criminal Court of Baltimore and sentenced to life imprisonment. The disposition of the indictment charging him with robbery with a deadly weapon is not disclosed by the record before us. Willson moved to dismiss the indictments, the motion was denied and his appeal therefrom to this Court is pending.

sister," as it appeared that he was given the warnings required prior to any interrogation. The *Miranda* requirements are necessary to interrogate, not to arrest. *Lamot v. State,* 2 Md. App. 378, 385; *Crosby v. State,* 2 Md. App. 578, 587. Also there was evidence that persons in his home at the time of his arrest were informed by the police of the reason for the arrest and where the appellant would be taken. That when the appellant signed the "Explanation of Rights" form he thought he was signing for a free lawyer for himself, did not, in the circumstances shown, have to be believed by the court or the jury. The appellant's assertion that his request "for a phone call was postponed until after the interrogation," did not have to be believed by the court or jury in the face of the testimony of the officers that he did not make such request prior to or during interrogation. "That he was coerced into signing a statement by the actions of Detective Smith (one of the three officers present at the arrest and interrogation) striking him upon the head with a telephone book" was specifically refuted by the denial of that officer that he had struck the appellant at any time. See *Streams v. State,* 238 Md. 278. That the statement was "not an accurate representation of what was said by him" went to the weight of the statement and the credibility of the witnesses, not to its admissibility. The weight of the evidence and the credibility of witnesses were matters for the jury. *Chandler v. State,* 7 Md. App. 647.

As the evidence was sufficient for the court and jury to find, under the respective applicable tests, that the *Miranda* warnings had been given prior to any interrogation, the question is whether the appellant waived those rights. There was evidence to show that the appellant was apprised of the warnings by two officers. One officer gave the appellant the Explanation of Rights form which contained each of the warnings. The appellant perused it and when he handed it back said he had read it. Then the officer read the rights to him one by one and as each right was read asked the appellant if he understood it.

The appellant said that he did. The appellant was requested to sign the form and did so, initialling a correction made in one of the warnings as written in the form. Another officer, a sergeant, who conducted the actual interrogation, was out of the room when the rights had been explained. When he returned he asked the officer if the rights had been explained to the appellant and when informed that they had been asked the appellant whether or not he was willing to give a written statement. The appellant said "he would and was willing" to give a statement. The sergeant testified, "I wanted to be sure myself that he was fully aware of his rights and preceding the statement I again affirmed the rights and placed them in the statement." He spelled out each right and asked the appellant if the officer had stated it. As to each the appellant said that it had been stated to him. Then the sergeant asked the appellant if he fully understood the rights and when the appellant answered, "Yes," the sergeant asked, "Do you still wish to tell us what you know?" and the appellant replied, "Yes, Sir." The sergeant then proceeded to interrogate the appellant and obtained a statement, which was typewritten as each question was asked and answered and which the appellant signed when it was concluded.

We fully discussed the matter of waiver in the context of the *Miranda* requirements in *Brown v. State,* 3 Md. App. 313, and further explained it in *Anderson v. State,* 6 Md. App. 688. And see *Spell v. State,* 7 Md. App. 121. In the light of those opinions we find a valid constitutional waiver here for we think that the totality of the circumstances—the attendant facts of the case—implicitly showed that the appellant voluntarily and intelligently relinquished his *Miranda* rights and made a statement. In *Anderson* we cited with approval *State v. Kremens,* 245 A. 2d 313, where the Supreme Court of New Jersey said, at 317:

"* * * Any clear manifestation of a desire to waive is sufficient. The test is the showing of

a knowing intent, not the utterance of a shibboleth. The criterion is not solely the language employed but a combination of that articulation and the surrounding facts and circumstances."

The appellant also claims that the statement was inadmissible because it was "rendered by a minor without the advice or counsel of a friendly adult, such as a parent, guardian or other responsible person." It appeared that the appellant was 19 years of age and had received an eighth grade education. On the witness stand he testified fluently and coherently both on direct and cross-examination, indicating a full understanding of the nature and import of the questions asked. That he was under 21 years of age did not, in itself, or considered with the circumstances here existing, render his confession inadmissible. It was succinctly stated in *Green v. State,* 236 Md. 334, 339 that "age alone will not render an otherwise voluntary statement involuntary." And we said in *State v. Hance,* 2 Md. App. 162 at 168: "* * * [I]f a statement is found to be voluntary, the fact that the mother of the juvenile making the statement was not permitted to attend the interrogation would have no bearing on the admissibility of the voluntary statement." See *Wiggins v. State,* 4 Md. App. 95, 106.

The appellant contends that the evidence was not sufficient to sustain the conviction. His argument on the contention goes only to his criminal agency, claiming that when he became aware that his companions actually meant to rob the victim as they had discussed "he proceeded to remove himself from the eventual scene of the crime." But the jury could properly find from the confession of the appellant that he participated in the murder and robbery. It permitted a conclusion beyond a reasonable doubt that the appellant was one of those who planned the robbery, was present when the murder and robbery was committed, at the least in a position to render aid and assistance to the other perpetrators, and that he received a fourth of the loot from which he paid a

sum to the one who had supplied the gun used in the crimes. The testimony of Powers, who committed the murder, would permit the jury to conclude that the appellant was one of those who planned the robbery, that he was in a position to render aid and assistance when the crimes were committed, that he came up to the victim when the shot was fired and the victim fell mortally wounded, that he was present when Matthews took money from the victim and Powers took the victim's gun and that the appellant fled the scene of the crime. The four participants met later and the appellant received about $70 as his share of the loot from which he paid $4 or $5 to the boy who had supplied the gun. And the testimony of Fannie Morton, not an accomplice to the crime, placed the appellant in the presence of Powers, who was her brother, immediately before the commission of the crime and shortly thereafter.[2]

We hold that the trial court did not err in denying the motions for judgment of acquittal. See *Williams and McClelland v. State*, 5 Md. App. 450.

*Judgments affirmed.*

---

2. The victim was an insurance man who collected insurance premiums from Fannie Morton. On the day of the crime Powers asked her if the insurance man had made his collection that day and the color of his car. When the insurance man arrived, Mrs. Morton paid him $8.79 in cash and went to the door when he left. She saw her brother, McCoy and several other boys across the street. The insurance man went into two other houses in Harford Court and "the boys were going down Harford Court and they seemed to have split up."