(No. 42402.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* JOSHUA GILMORE BEY, Appellant.

*Opinion filed June 29, 1970.*

536

Lewis A. Wenzell, of Chicago, appointed by the court, for appellant.

William J. Scott, Attorney General, of Springfield, and Edward V. Hanrahan, State's Attorney, of Chicago, (James B. Zagel, Assistant Attorney General, and Elmer C. Kissane and John R. McClory, Assistant State's Attorneys, of counsel,) for the People.

Mr. Chief Justice Underwood delivered the opinion of the court:

Defendant, Joshua Gilmore Bey, was convicted of murder in a jury trial in the circuit court of Cook County, and sentenced to 14 to 36 years imprisonment. He now appeals directly to this court on the basis of constitutional questions. 43 Ill.2d R. 603.

During the early morning hours of May 15, 1968, de-

fendant stabbed and killed William Bradford in the third floor hallway of an apartment building where the two men lived. Defendant himself called the police station and reported the stabbing. He made a statement to Officer Bregin, who responded to the call with Officer Popravak, and he repeated the statements to Officers Downey, Boreczky, and Hoffman, who arrived on the scene a short time later. Defendant's pretrial motion to suppress the oral statements was denied following a hearing at which defendant did not testify. The statements were admitted in evidence at the trial, where defendant did contradict the officers' testimony. He denied having made the inculpatory statements recounted by the officers and maintained that he had told them the deceased had attacked him with a piece of broken glass, and the stabbing occurred in self-defense. The officers denied that defendant had made such a statement, and reported that no glass was found at the scene. Defendant now contends that the inculpatory statements were unconstitutionally elicited, and that a police report, which allegedly contains favorable evidence on that issue, was knowingly withheld by the prosecution at the time of the pretrial hearing, and then routinely turned over to the defense for cross-examination purposes at trial, after its primary usefulness had passed.

Officer Bregin testified at the hearing on the motion to suppress that as he and Officer Popravak arrived at the third floor, they saw the decedent lying in a pool of blood. Popravak returned to the police car to call for the squadrol, and Bregin entered the third floor hallway alone. He saw defendant sitting on a chair in his apartment, and asked him what happened. Defendant replied, "I just killed that man", whereupon Bregin advised him of his constitutional rights. Defendant acknowledged that he understood his rights, and Bregin then asked him where the knife was; defendant picked up a long butcher knife from a nearby table, and replaced it at Bregin's request. When asked why he had

killed the man, defendant answered that the decedent had been spraying roach powder under the door while defendant was eating. He added that he had washed the knife and mopped the blood from the floor of his apartment before going to the phone booth outside to call the police. At this juncture Officer Popravak returned and handcuffed defendant, who was being held at gunpoint by Officer Bregin; the other officers arrived some time later. Two of these officers, Boreczky and Downey, filed the police report which defendant now contends should have been provided to the defense at the time of the hearing. The report purported to recount Officer Bregin's discussion with defendant, but was inconsistent with Bregin's testimony as to the point at which the warnings were given. According to the report, when Officer Bregin learned that defendant was responsible for the stabbing, he immediately inquired as to the whereabouts of the knife, and defendant answered with a single extended statement as to his motive and the circumstances surrounding the stabbing; the defendant was reportedly then advised of his rights when he ceased talking.

Defendant contends that the prosecution was under a duty to turn the report over at the time of the hearing, since it contained evidence favorable to the accused on the question of Officer Bregin's compliance with the *Miranda* requirements. (*Miranda* v. *Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.) We find this contention to be without merit, however, since that officer's discussion with defendant was not an instance of in-custody interrogation subject to the *Miranda* ruling. The United States Supreme Court made it clear that its ruling did not govern the fact-finding process of "General on-the-scene questioning as to facts surrounding a crime * * *." (384 U.S. at 477, 16 L. Ed. 2d at 725, 86 S. Ct. at 1629.) Nor does the ruling affect statements made voluntarily, which are clearly not the result of compulsion and interrogation: "There is no requirement that police stop a person who enters a police sta-

tion and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." (384 U.S. at 478, 16 L. Ed. 2d at 726, 86 S. Ct. at 1630.) The sole application of *Miranda* is to statements elicited through custodial interrogation; "By custodial interrogation, we mean questioning initiated by law enforcement officers * * *." (384 U.S. at 444, 16 L. Ed. 2d at 706, 86 S. Ct. at 1612.) Defendant himself called the police to report the stabbing, and awaited their arrival on the scene. His statements to Officer Bregin occurred immediately upon the officer's arrival, at his first opportunity to speak with the officers, and transpired in a very brief period of time. In our opinion, *Miranda* is inapplicable under such circumstances, where the defendant himself called the police and initiated the investigation, and no compulsion is shown. (See *People* v. *Howell,* 44 Ill.2d 264.) Since Officer Bregin's initial investigation and brief conversation with defendant was not custodial interrogation subject to *Miranda,* the allegedly suppressed police report was immaterial to the purposes of the hearing; therefore, the prosecution was under no duty to produce the report at that time.

Defendant also challenges the quality of proof as to the *Miranda* warnings and waiver which preceded his statement to the other officers. Assuming, without deciding, that admissibility of the second statement was subject to those requirements, we find no violation. Several officers witnessed the warning, and their testimony at the hearing and at the trial was not perfectly consistent as to the precise language used in advising defendant of his rights. However, their recollection was sufficiently precise to warrant the trial court's conclusion that the warnings were given in proper form, and minor inconsistencies in their testimony do not cast doubt upon that determination. Defendant further

540

argues that his statements were inadmissible due to the absence of an explicit waiver of his rights. However, we believe the proof sufficient to justify the trial court's apparent conclusion that the totality of the circumstances in this case reveal a voluntary and intelligent waiver. See *People* v. *Hill,* 39 Ill.2d 125; *McCoy* v. *State,* 8 Md. App. 127, 258 A.2d 611; *State* v. *Adams,* 76 Wash. 650, 458 P.2d 558, 570-71, and cases cited.

The judgment of the circuit court of Cook County is accordingly affirmed.

*Judgment affirmed.*