THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM DAGGE, Defendant-Appellant.

(No. 55917;

First District (4th Division)—March 14, 1973.

Charles A. Bellows, of Chicago, (Jason E. Bellows and Ronald N. Heftman, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and Robert C. Samko, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE ADESKO delivered the opinion of the court:

Defendant, William Dagge, was convicted of murder after a jury trial and was sentenced to the Illinois State Penitentiary for a term of not less than 14 nor more than 20 years. Defendant raises the following issues for review:

 1. Whether the trial court erred in admitting defendant's

extra-judicial confessions into evidence, as the products of knowing and voluntary waivers of constitutional rights;

2. Whether defendant was proven guilty beyond a reasonable doubt;

3. Whether the trial court erred in refusing defendant's jury instruction on the admissibility of confessions; and

4. Whether the trial court erred in admitting photographs of the murder scene into evidence.

The facts are as follows:

On October 8, 1969, at approximately 11:30 A.M., the body of Vera Allison was found in her apartment in the building she managed at 4727-31 North Kenmore in Chicago. She had been strangled with the cord from a vacuum cleaner through which a plunger had been inserted and used as a tourniquet. Her dress had been pulled up and her underclothing showed. The metal box in the kitchen closet where she kept the rent money she collected was empty. Two photographs showing the body of Vera Allison were admitted into evidence.

At about 10:30 P.M., on the evening of November 6, 1969, defendant William Dagge, entered Chicago Police Department headquarters and told the officer at the information desk that he wanted to be arrested as he had murdered his landlady. The officer detected an odor of alcohol on defendant's breath, but he did not believe that defendant was drunk. When the officer asked defendant why he had committed murder, defendant replied that he wanted to have sexual relations with the deceased and when she refused they struggled and he killed her. He also stated that he wanted money. The officer's first thought was that the defendant merely wanted to be arrested so that he could spend the night in the police station out of the cold, but as defendant told his story, the officer believed him, warned him of his rights and called in detectives.

Two Chicago Police Detectives, officers Howlett and Skelly arrived at headquarters to question defendant. They were generally familiar with the case of the murder of Vera Allison although they were not aware of all of the specific details involved as they had not been initially assigned to investigate the case. Defendant was informed of his constitutional rights and he then made an oral statement. He confessed that on the evening of October 8, 1969, he had a "sexual urge" and went to the apartment of Vera Allison to satisfy it. When she refused his advances, defendant related that he strangled her with a cord and a plunger.

The officers then took defendant to their offices at Area Six Homicide where defendant was advised of his constitutional rights and where a written statement was then taken from defendant. In this statement, de-

fendant again set forth how he had murdered Vera Allison and where he had obtained the cord and the plunger. Defendant, however, refused to sign the statement he had given.

James Dagge, defendant's brother testified that on the night of Vera Allison's murder, he received a telephone call from defendant, who stated that he was hiding under his bed because of an argument taking place in his landlady's apartment. Defendant then testified in his own behalf and denied murdering Vera Allison.

Defendant testified that on the evening of October 7, 1969, he was in a tavern and was drinking throughout the evening. At approximately midnight he stated that he took a cab to his apartment to obtain more money to continue drinking. He stated that he was in his apartment for no more than fifteen minutes and returned to his waiting cab which took him back to the tavern. Defendant testified that after the tavern closed, he walked to his brother's house where he spent the night. He stated that he did not learn of the death of Vera Allison until the following day when he returned to his apartment.

Defendant stated that on the day of his confession he drank heavily and that he knew nothing of the cord and plunger until the police informed him of the way Vera Allison was killed. He also denied stealing any money.

A psychiatrist who examined defendant on April 1, 1970, testified that at the time of his examination he diagnosed defendant as an ambulatory schizophrenic. He stated that it was possible that defendant could have been suffering from delusions when he confessed to the murder of Vera Allison.

At the conference on instructions, defendant tendered an instruction stating that if the jury believed defendant suffered from a delusion that he committed murder at the time he confessed, then the jury should disregard the confession. The instruction was refused by the court.

At the conclusion of the trial, the jury found defendant guilty of murder and after a hearing in aggravation and mitigation, defendant was sentenced to serve not less than 14 nor more than 20 years in the Illinois State Penitentiary.

Defendant's initial contention on appeal is that the trial court erred in admitting his out of court confessions into evidence. At trial in the instant case, evidence of three out of court confessions by defendant were admitted into evidence. Defendant concedes that the first confession made by him to the officer at the information desk of Chicago Police Headquarters was properly admitted, as defendant was not then in custody and merely volunteered the information. (*Miranda v. Arizona*, 384 U.S. 436, 444, 16 L.Ed.2d 694, 706, 86 S.C. 1602, 1612; *In re Orr*, 38

Ill.2d 417, 231 N.E.2d 424.) Defendant maintains, however, that his subsequent oral and written confessions were improperly admitted into evidence as he was not properly informed of his constitutional rights as required by the United States Supreme Court in *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed2d 694, 86 S.C. 1602. Defendant also contends that he could not have knowingly waived his constitutional rights as he was both severely intoxicated and suffering from schizophrenic delusions when the confessions were made.

Defendant contends that when he made an oral confession to detectives Howlett and Skelly, who were summoned to police headquarters, he was not properly informed of his constitutional rights. Defendant also maintains that his subsequent written confession which was transcribed at Area Six Detective Headquarters and which recited the acknowledgment of defendant as to his understanding of each of the *Miranda* warnings, was improperly admitted as it was the direct result of the earlier improperly obtained oral confession.

■■ Detective Skelly testified at a hearing on a motion to suppress the confessions that before defendant made his oral confession at Chicago Police Headquarters:

"I informed the defendant of the constitutional rights.

I advised him he had a right to remain silent, and I asked him if he understood that, and he said he did.

I advised him that he had a right to know that anything he will say can and would be used against him in a court of law.

I advised him that he had a right to have counsel present before any questioning took place.

I advised him if he didn't have the funds to hire an attorney, the State would furnish an attorney before any questioning took place.

I asked him if he understands it, and he said he did."

Detective Howlett, who was a bystander while Detective Skelly advised defendant of his rights and questioned defendant, testified that Detective Skelly advised defendant of all of his rights, but that he (Howlett) was unable to recite all of the rights required by *Miranda* which Skelly advised defendant of. Defendant maintains that such a discrepancy between the testimony of the two detectives evidences that defendant was not properly informed of his rights. In *People v. Bey,* 45 Ill.2d 535, 259 N.E.2d 800, the Illinois Supreme Court considered a case where there were discrepancies in the testimony of the officers present when a defendant was admonished of his *Miranda* rights. The court held:

"However, their recollection was sufficiently precise to warrant the trial court's conclusion that the warnings were given in proper

form, and minor inconsistencies in their testimony do not cast doubt upon that determination."

In the instant case, the trial court heard the evidence and concluded that defendant had been properly admonished as to his constitutional rights. Our examination of the record shows that the court did not err in its determination.

Defendant further contends that even if he were properly advised of his rights, he could not have knowingly and understandingly waived his rights to silence and counsel, as he was intoxicated and suffering delusions at the time. Defendant testified that he was drunk when he went to police headquarters and confessed to the murder of Vera Allison and defendant's brother testified that on the night defendant turned himself in, he was very definitely drunk. Defendant's brother testified, however, that defendant could stand without assistance and did not stagger. Defendant further testified that he did no drinking after leaving his brother. The officer defendant confronted at police headquarters testified that while there was an odor of alcohol on defendant's breath, it was not particularly strong. The officer stated that defendant's speech was not slurred and that his eyes were neither blurred nor bloodshot. The two detectives who questioned defendant also testified that they noticed no indications of defendant's intoxication.

Dr. Melvin Seglin, a court appointed psychiatrist who examined defendant, testified that in his opinion, defendant was an ambulatory schizophrenic who could have been operating under a delusion when he confessed to the murder of Vera Allison. Dr. Haines, another psychiatrist who examined defendant at the court's request, however, reported that defendant exhibited no committable mental disease, was aware of the nature of the charge against him, was able to cooperate with his counsel, and had no complaints relating to the nervous system. The three police officers who dealt with defendant at the time of his confessions testified that defendant appeared normal to them. He was responsive to questioning and answered questions intelligently. Also, the officers stated that defendant furnished details of how the killing was committed.

■■ In affirming a burglary conviction of a defendant who claimed he was incompetent to knowingly and voluntarily waive his rights under the Fifth and Sixth amendments to the United States Constitution, this court held in *People v. Noonan*, 5 Ill.App.3d 1109, 284 N.E.2d 446, that:

"The warnings given the defendant complied with the constitutional requirements set out in *Miranda v. Arizona* (1967), 384 U.S. 436. Whether he understood and waived them was a factual question, the answer to which depended upon the acceptance

or rejection of the defendant's testimony or that of the police officers. The credibility and weight to be given to the testimony of witnesses is a matter to be determined by the trial judge. His determination will not be reversed unless it appears to be palpably erroneous. (*People v. Weller* (1970), 123 Ill.App.2d 421, 258 N.E.2d 806. *Cf. People v. Johnson* (1969), 112 Ill.App.2d 148, 251 N.E.2d 393.)"

In the instant case we find that the trial judge did not err in finding defendant knowingly and voluntarily waived his rights and that his confessions were properly admitted.

Defendant next contends that he was not proven guilty beyond a reasonable doubt. Defendant again argues that his confessions were improperly admitted and he contends that as those confessions were relied upon by the jury in finding him guilty, he was therefore not proven guilty beyond a reasonable doubt.

■■■ We have already decided in the instant case that the trial court did not err in admitting defendant's confessions into evidence. Where there is evidence that a crime has been committed, the confession of a defendant that he committed the crime can be sufficient for conviction. (*People v. Underhill,* 38 Ill.2d 245, 230 N.E.2d 837, *cert. denied* 391 U.S. 912; *People v. Melquist,* 26 Ill.2d 22, 185 N.E.2d 825, *cert. denied* 372 U.S. 967.) In the case at bar there was ample evidence that Vera Allison had been murdered by being asphyxiated through pressure applied by a vacuum cleaner cord tightened about her neck with the handle of a plunger. Defendant on three separate occasions confessed that he had committed that crime and gave details of how he had accomplished it. All of the specifics of the crime related by defendant were found to be correct. How much credibility to be afforded such confessions as well as defendant's denial of his guilt at trial and such inferences raised by defendant at trial as to the State's failure to find his fingerprints at the scene, were properly weighed by the jury and a court of review will not substitute its judgment for that of the trier of fact unless the evidence is so improbable or unreasonable as to leave a reasonable doubt. (*People v. Davis,* 5 Ill.App.3d 95, 283 N.E.2d 317.) Our examination of the record in the instant case reveals that defendant was convicted of murder beyond a reasonable doubt.

Defendant's third contention on review is that the trial court erred in refusing to give Defendant's Instruction No. 7 to the jury. The refused instruction stated:

"The Court instructs the jury that if they find from the evidence that the defendant made an oral and written confession while

suffering from a delusion that he committed the offense charged in the indictment, then the jury is to disregard the confessions."

The court instead gave Peoples Instruction No. 8 (I.P.I. Criminal No. 3.07) which stated:

"You have before you evidence that the defendant confessed that he committed the crime charged in the indictment. It is for you to determine whether the defendant confessed, and, if so, what weight should be given to the confession. In determining the weight to be given to a confession, you should consider all of the circumstances under which it was made."

██ Defendant contends that as his theory was that he was suffering from a schizophrenic delusion at the time of his confession, it was necessary that his Instruction No. 7 be given to the jury. It is the function of the trial court, however, to determine whether a confession was voluntarily made after a knowing waiver of one's rights and it is the function of the jury to determine what weight should be given such confession, once the court rules on its admissibility. *People v. Kemp,* 29 Ill.2d 321, 194 N.E.2d 217. *People v. Stacey,* 25 Ill.2d 258, 184 N.E.2d 866, *cert. denied,* 371 U.S. 964.

██ In the instant case, the trial court found that the confessions were admissible as they were voluntarily made by defendant after a knowing waiver of his rights. It is not the province of the jury to disregard and thus totally fail to consider a confession which the trial court has received in evidence, as Defendant's Instruction No. 7 would have them do, though what weight, if any, they subsequently afford that confession is wholly within the province of the jury. (*People v. Hester,* 39 Ill.2d 489, 237 N.E.2d 466.) Defendant's Instruction No. 7 was properly refused.

Defendant's final contention on appeal is that the trial court erred in admitting into evidence photographs of the deceased which he contends were inflammatory and prejudicial.

██ The admission of photographs at trial rests within the sound discretion of the trial court and the exercise of that discretion will not be interferred with unless it is shown that there has been an abuse to the accused's prejudice. *People v. Nicholls,* 42 Ill.2d 91, 245 N.E.2d 771, *cert denied* 396 U.S. 1016; *People v. LeMay,* 35 Ill.2d 208, 220 N.E.2d 184.

 Photographs may be admissible to establish facts in issue and to corroborate facts set forth in a confession. (*People v. Nicholls,* 42 Ill.2d 91, 245 N.E.2d 771, *cert. denied* 396 U.S. 1016.) In the instant case, the State's case rested upon the confessions by defendant and corroboration of the facts in the confessions. Defendant attacked the confessions and

his theory was that he was under a delusion that he killed the deceased at the time of his confessions. A psychiatrist testified that such a delusional state was possible. Defendant testified that he guessed at the details of the manner in which the homicide was committed. The trial judge found that the photographs in question tended to corroborate the State's witnesses and to refute defendant's testimony that he made up the details of the slaying and concluded that such photographs should be admitted. We find that the trial court did not abuse its discretion in allowing the photographs into evidence.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is hereby affirmed.

Judgment affirmed.

BURMAN, P. J., and DIERINGER, J., concur.