*In re* AARON TUCKER *et al.,* Respondents-Appellants.

THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* AARON TUCKER *et al.,* Respondents-Appellants.

(No. 57418;

First District (3rd Division)—June 6, 1974.

Paul M. Brayman, of Cook County Legal Assistance Foundation, Inc., of Evanston, for appellants.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis, Patricia C. Bobb, and Robert Faithful, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

After an adjudicatory hearing in the juvenile division of the circuit court of Cook County, the respondents were adjudged to be delinquent; Melvin Malone for committing robbery and murder and Aaron Tucker for committing theft. Respondents contend that the trial court erred in denying their motion to suppress statements made after an illegal arrest, and also that the evidence was insufficient to establish their guilt beyond a reasonable doubt.

Certain facts are undisputed. On July 23, 1971, at approximately 2 P.M., Marion Gahagan, age 73, was the victim of a purse snatching which occurred as she was walking in front of a post office at Custer and Main Streets in the city of Evanston. She was knocked to the ground during the incident. She was taken to a hospital where she died approximately 1 week later. A coroner's pathologist examined her body and testified that Mrs. Gahagan died from a skull fracture and brain lacerations caused by the application of violence to her skull.

Connie Hutchinson and Patricia Peterson observed the victim walking at the time and place in question. A short time later they observed her lying on the street and saw several young men running north on Custer Street. They could not identify any of the offenders, but observed a purse approximately 30 feet down Custer Street in the direction in which the boys had fled.

During a hearing on the motion to suppress, Officer James Edwards of the Evanston Police Department testified that following the incident he had a conversation with a private citizen who refused to disclose her identity. She informed the officers that two male Negroes had run through her yard to the alley. One of the men was 5'6" tall and the other was 5'8" tall. One had braided hair and carried something in his hand. Officer Edwards testified that he never talked to any other witnesses.

Pursuant to the officers' investigation, the respondents, along with two other youths not involved in this appeal, were arrested on the day of the crime. They were taken to the police station where a lineup was conducted. They were released the same day. On August 2, 1971, both respondents were again placed under arrest. On neither occasion did the police have warrants for respondents' arrest. They were again transported to the police station where they were given their constitutional *Miranda* warnings. After about 1 hour, respondents gave written statements which they subsequently signed. The trial court denied respondents' motion to suppress, and their statements were introduced into evidence at the adjudicatory hearing.

Respondent, Melvin Malone, in his written statement, asserted that on the day in question, Aaron Tucker told him that Charles Davis and Carl Malone had gone to Main Street to snatch a purse. He went to Main Street to stop them, and observed the two walking behind a woman. Melvin Malone stated that he then ran up to the woman and grabbed her purse. He and Aaron Tucker then ran down the street. He threw the purse down on Custer Street and went into his home.

Respondent, Aaron Tucker, in his written exculpatory statement, asserted that Davis and Carl Malone told him they were going to Main Street to snatch a purse. Shortly thereafter, Tucker informed Melvin Malone and they followed Davis and Carl Malone. Melvin told Carl not to snatch a purse, but Davis and Carl continued to follow the woman down Main Street. Tucker stated that he started to walk away and after taking several steps, he heard a scream. He ran. He looked back and saw Melvin Malone running behind him, carrying something in his hand.

Aaron Tucker testified at the adjudicatory hearing that he never took part in the robbery. On July 23, at 1:30 P.M., he was at home with his mother and cousin. At 1:50 P.M., he was walking to the Malone home when he was stopped by the police. It was stipulated that Tucker did sign the statement, but he testified that the contents of the written statement given to the police were untrue.

■■ Respondents' first contention is that the trial court erred in denying their motion to suppress statements which were the result of an illegal arrest. Under the Code of Criminal Procedures, a police officer may arrest a person without a warrant when he has reasonable grounds to believe that the person has committed an offense. (Ill. Rev. Stat. 1971, ch. 38, par. 107—2(c).) The quantum of proof needed to establish probable cause is less than that required to sustain a conviction at trial. (*People v. Harper* (1973), 16 Ill.App.3d 252, 305 N.E.2d 680.) The test of probable cause is whether a reasonable and prudent man in possession of the knowledge of the arresting officer would believe that the

person to be arrested is guilty of a crime. *People v. Macias* (1968), 39 Ill.2d 208, 234 N.E.2d 783.

■■ In the present case, the police officers learned from a witness that two men ran through her yard shortly after the crime. The description was brief and scanty. On the same day, the respondents were taken into custody, put into a lineup, and were released. On August 2, they were again arrested, although the officers had no new evidence linking them to the crime. Officer Edwards testified that during this period of time he did not interview any additional witnesses. Under these circumstances, the officers did not have reasonable grounds to believe that the respondents had committed an offense, and their arrest on August 2 was illegal.

However, the fact that respondents' arrest was illegal does not necessarily require that statements given thereafter be suppressed. In *People v. Brown* (1974), 56 Ill.2d 312, 307 N.E.2d 356, the defendant urged on appeal that statements taken after his illegal arrest should have been suppressed by the trial court. Our supreme court rejected defendant's argument, stating at page 317:

> "From our examination of the record, in light of the circumstances shown by the testimony, we conclude that the giving of the *Miranda* warnings, in the first instance by the police officer and in the second by the assistant State's Attorney, served to break the causal connection between the illegal arrest and the giving of the statements and that defendant's act in making the statements was 'sufficiently an act of free will to purge the primary taint of the unlawful invasion.' (*Wong Sun v. United States*, 371 U.S. 471, at 486.) We hold, therefore, that the circuit court did not err in admitting the statements into evidence."

■■ In the present case, the statements made by both respondents, one of which was exculpatory, were not made contemporaneously with respondents' illegal arrest. The statements were made approximately 1 hour after their arrest, and after both had been given proper *Miranda* warnings. The signed statements themselves show that proper *Miranda* warnings were given to both respondents. After an examination of the record, we conclude that there was sufficient time accompanied by the warnings so as to break any causal connection between the illegal arrest and the giving of the statements. Respondents' statements were properly admitted into evidence.

Respondents also contend that they were not proved guilty beyond a reasonable doubt. The quantum of proof required in a juvenile delinquency proceeding is the same as that required for a conviction in a criminal case. *In re Urbasek* (1967), 38 Ill.2d 535, 232 N.E.2d 716.

In the present case, the victim had her purse stolen. During the rob-

bery, she was knocked to the ground. She was taken to the hospital where she subsequently died as a result of the injuries sustained during the robbery.

■■ In his statement, Melvin Malone implicated himself in the occurrence. Where there is evidence that a crime has been committed, the confession of a defendant that he committed the crime can be sufficient to sustain a conviction. (*People v. Dagge* (1973), 10 Ill.App.3d 726, 295 N.E.2d 336.) Malone, in his statement, admitted grabbing the victim's purse and then fleeing down the street. The evidence was sufficient to establish his guilt beyond a reasonable doubt.

■■ The only competent evidence against Aaron Tucker was his statement given to the police. Melvin Malone's statement was not competent evidence against Tucker because it was not made in Tucker's presence and was not assented to by him. *People v. Tunstall* (1959), 17 Ill.2d 160, 161 N.E.2d 300.

■■ Tucker, in his own statement, stated that on the date in question he went to stop Carl Malone from snatching a purse. After hearing Melvin tell Carl not to take the purse, Tucker stated that he walked away. He heard a scream, and ran. According to Tucker's statement, he was at all times attempting to stop the purse snatching and was unaware that Melvin Malone was going to commit a crime. Mere presence at or near the scene of a crime or negative acquiescence is insufficient to make a party accountable for the actions of another. (*People v. Barnes* (1924), 311 Ill. 559, 143 N.E. 445.) After a review of the entire record, we conclude that the evidence adduced at the adjudicatory hearing was insufficient to prove Tucker guilty beyond a reasonable doubt.

Accordingly, the judgment of the circuit court of Cook County finding Melvin Malone to be delinquent is affirmed. The judgment finding Aaron Tucker to be delinquent is reversed.

Affirmed in part; reversed in part.

DEMPSEY and McGLOON, JJ., concur.