THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ULYSSES MURPHY, Defendant-Appellant.

(No. 58855; ▮▮▮▮▮▮

First District (5th Division)—January 31, 1974.

Michael Jay Green, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis, Roger Horwitz, and Daniel F. Murray, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

In a jury trial defendant was found guilty of murder and sentenced to a term of not less than fifteen, nor more than thirty years.

Defendant contends: (1) he did not knowingly and intelligently waive his right to counsel when he made an oral statement to a police officer because he was not made aware of the fact that he was to be charged with murder; (2) the State failed to comply with Ill. Rev. Stat. 1971, ch. 37, par. 703—2, which requires the police to make a reasonable effort

to contact the juvenile's parents or to have a youth officer present during questioning; and (3) that he was not proved guilty beyond a reasonable doubt.

On December 30, 1970, at approximately 5:00 P.M., Ernest Bradley, Jr., a cab driver, was proceeding southbound on Greenwood Avenue when Keith Williams fired a shotgun blast into Bradley's cab causing the cab driver's death.

At a hearing held on defendant's motion to suppress statements and identifications, John Yucaitis, a police officer, testified as a witness for the State: On January 4, 1971, he arrested Joe Thomas and defendant and transported them to Area 2, Homicide headquarters, where they were placed in separate rooms. He advised defendant of his rights and "informed him of the allegations against him." Then, he left the defendant alone. When he returned, he again advised defendant of his rights and after defendant responded that he fully understood his rights, defendant gave an oral statement to Yucaitis stating that he and Joe Thomas, while walking down the street, met Keith Williams and Larry Jones. Williams had a shotgun and when asked what they were going to do, Williams replied, "Rob someone." Defendant and Thomas went to the end of the street to act as lookouts and when Williams' attempt to stop a cab failed, Williams fired his shotgun into the windshield of the cab and two more shots into the driver's side of the cab. When the shots were fired, defendant and Thomas left, went around the block and met up again with Williams and Jones at the latter's house. After taking the oral statement, Officer Yucaitis asked defendant whether he would relate the same information to an assistant State's attorney and defendant said he would. Patrick McNally, the assistant State's attorney, came to the station and, after reading defendant his rights and ascertaining that defendant fully understood them, took a statement from the defendant in the presence of a court reporter, a youth officer, and the defendant's father. No promises were made by McNally to the defendant. On cross-examination, Yucaitis stated that during the first conversation he told defendant that "we were informed he was implicated with a shooting but according to the witnesses he was not the one with the gun."

Patrick McNally, an assistant State's Attorney, testified, as a witness for the State, that on January 4, 1971, he received a call from Officer Yucaitis, asking him to come to the station to take statements from two youths. At the station he informed the defendant of his rights in the presence of defendant's father and, when he asked defendant if he understood the rights, defendant answered affirmatively. Defendant told McNally that he was 16 years old and that on December 30, 1970, he

was with Joe Thomas when they saw Keith Williams and Larry Jones. Williams had a shotgun and when asked what they were going to do, Williams replied that "they figured to stick up some guy." They all saw a cab coming southbound on Greenwood and Williams said, "I am going to get this cab." Williams then asked him and Thomas to look out for police and defendant stated, "We looked for the police, and we said no, there was no police coming." Defendant then stated that Williams went into the middle of the street, pointed the shotgun, and fired into the cab.

Defendant, 16 years of age at the time of the occurrence, testified that on January 4, 1971, he was arrested at Joe Thomas' house and taken to a police station. He was asked to give a statement and a police officer showed him some papers with "all our names on it and said, we all was wanted for murder."

Defendant's motion to suppress his statements and his identifications were denied.

During the State's case in chief, Tyrone Robinson and Nathaniel Nelson each testified that on December 30, 1970, they were walking down Greenwood Avenue and saw defendant, who both had known previously, walking towards them. Robinson stated that defendant stopped in a gangway where Keith Williams, Larry Jones, and Joe Thomas were standing. As Nelson and he passed the gangway, he heard someone say, "Let's get this cab." He did not see the speaker and he did not recognize the voice. Defendant then went into the street and attempted to flag down the cab, but it did not stop. Williams, who had moved to the curb, began firing a shotgun at the cab. Nelson testified that, as he and Robinson approached the gangway, defendant walked across Greenwood Avenue and Keith Williams then came out of the gangway with a rifle in his hands. When he and Robinson were at the entrance of the gangway, he heard defendant say, "Let's get this cab." Joe Thomas and Larry Jones were inside the gangway. Defendant tried to flag down the cab, but the cab did not stop.

Assistant State's Attorney McNally then testified about the statement taken from defendant, concerning which he testified at the suppression hearing.

OPINION

## I.

Defendant first contends he did not knowingly and intelligently waive his right to counsel at the time of his oral statement to Officer Yucaitis because he was not made aware of the fact that he was to be charged with murder. He refers us to *Schenk v. Ellsworth*, 293 F. Supp. 26 (D.

Mont. 1968), where the defendant was not advised as to the reason for his detention and questioning, and the court held that he thereby did not knowingly and intelligently waive his right to counsel. There, the county attorney told defendant he wanted to talk to him "in connection with the shooting incident of his wife." In the case at bar, defendant argues that once in custody and, for all purposes charged with a crime, it is mandatory that he be told of the crime he is suspected of having committed before a statement may be taken.

■■ We are of the opinion that defendant here had such knowledge before he gave his oral statement to Officer Yucaitis. The record discloses that on three occasions, all prior to his giving the oral statement, he was informed of his suspected involvement in the cab driver's murder. In his own testimony at the suppression hearing he stated:

"He [police officer] asked me, would I give a statement and I said nothing. Then he showed me some papers with all our names on it and said, we all was wanted for murder."

In addition, Officer Yucaitis testified at the same hearing that (1) "After advising him of his rights I informed him of the allegations against him," and (2) "I stated that we were informed he was implicated with a shooting but according to the witnesses he was not the one with the gun."

In view thereof, it is our belief that defendant was sufficiently advised as to the reason for his detention and questioning so that he could intelligently make the decision as to whether he wanted counsel.

## II.

■■ Defendant also argues that his oral statement was tainted because the arresting officer failed to make a reasonable effort to contact his parents or to have a youth officer present during questioning as required by Ill. Rev. Stat. 1971, ch. 37, par. 703—2. The officer who initially questioned defendant did not comply with section 703—2; however, where a juvenile defendant has been admonished in detail with respect to his right to remain silent and to have counsel and he understood such admonition, a police officer's failure to comply with section 703—2 requiring notice to parent or responsible person and transfer of child to juvenile officer does not preclude admission of defendant's statement (*People v. Steptore*, 51 Ill.2d 208, 281 N.E.2d 642). Here, the officer testified that defendant was admonished in detail with respect to his right to remain silent and to have counsel. Defendant did not testify to the contrary, nor did he deny the officer's statement that defendant understood the admonitions. Under these circumstances, the trial court was not in error in admitting his oral statement.

## III.

Defendant next maintains that the evidence was not sufficient to prove him guilty beyond a reasonable doubt. Ill. Rev. Stat. 1971, ch. 38, par. 5—2(c) in pertinent part, provides that a person is legally accountable for the conduct of another when:

"Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense."

He argues that there was no showing of specific intent to promote or facilitate the commission of the offense and that his mere presence at or in the vicinity of the scene of the crime is not culpable.

The State refers us to defendant's written statement, given to the assistant State's Attorney, wherein Williams told defendant that "they figured to stick up some guy" and asked defendant and Thomas to look out for police and that defendant further testified "We looked for the police, and we said no, there was no police coming." We note from the record that the events leading up to the offense were substantially corroborated by the testimony of the two eyewitnesses, Robinson and Nelson, who also testified that defendant attempted to flag down the cab.

■■ Proof of a common design need not be supported by words of agreement but can be drawn from the circumstances surrounding the commission of the act (*People v. Jones*, 12 Ill.App.3d 643, 299 N.E.2d 77), and one may aid and abet, without actively participating in the overt act, and if the proof shows he was present at the crime without opposing it, the trier of fact may competently consider this conduct in connection with other circumstances and thereby reach a conclusion that such person assented to the commission of the criminal act and was thereby aiding and abetting the crime. *People v. Richardson*, 32 Ill.2d 472, 207 N.E.2d 478.

In the instant case, defendant knew Williams intended to rob someone and defendant's assent was further apparent from his testimony that he answered Williams' request to look out for police and from the testimony of Nelson and Robinson that he attempted to flag down the cab. We believe that a consideration of all the evidence in this case supports the conclusion that defendant assented to the commission of the criminal act and was thereby aiding and abetting the crime.

■■■ Finally, defendant contends that the evidence was not sufficient to prove him guilty beyond a reasonable doubt because the trial judge found the co-defendant, Thomas, not guilty. In *People v. Jones*, 132 Ill.App.2d 623, 625, 626, 270 N.E.2d 288, it was stated:

" 'When there is the slightest difference in the evidence as be-

tween two persons jointly tried the trier of facts may weigh the evidence and make allowance for such difference, and when that is done and one is acquitted and the other convicted, the fact that the evidence involves the acquitted person to some extent will not require the exoneration of the other.'"

Of importance here is the fact that while both were tried together, defendant was tried by a jury and Thomas received a bench trial. Each of these triers of fact could and did give different weight to the testimony elicited at trial. Applying the rule of *Jones* to the case at bar, defendant's argument must fail because we see a significant difference in the evidence presented as against defendant and co-defendant, Thomas.

Aside from the statements of defendant in which he said that he and Thomas looked for the police, which are negated by the testimony of Nelson that Thomas remained in the gangway during the occurrence, there is no testimony that Thomas assented to the commission of the crime. Contrariwise, the record discloses substantial evidence to support the verdict as to defendant: his statements to Yucaitis and McNally that he acted as a lookout for police, the testimony of Nelson that he made the statement "Let's get this cab," and the testimony of Nelson and Robinson that he attempted to flag down the cab.

The difference in evidence was sufficient to raise a reasonable doubt of the guilt of Thomas in the mind of the trial judge.

From our review of the entire record, we believe there was sufficient evidence upon which the jury could find a rational basis upon which to justify defendant's accountability.

For the reasons stated, the judgment is affirmed.

Affirmed.

DRUCKER and LORENZ, JJ., concur.