*In re* TERRY LEE BIZZLE, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* TERRY LEE BIZZLE, Respondent-Appellant.)

First District (2nd Division) No. 61671

Opinion filed February 26, 1976.

322

Patrick A. Keenan, of Chicago (Edward N. Pietrucha, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Michael E. Shabat, and Iris E. Sholder, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Terry Lee Bizzle (respondent), 16 years of age, was adjudicated a delinquent minor (Ill. Rev. Stat. 1973, ch. 37, par. 702—2) after an adjudicatory hearing in the juvenile division of the circuit court of Cook County on a charge of murder. (Ill. Rev. Stat. 1973, ch. 38, par. 9—1 (a)(1).) He was sentenced to commitment to the Department of Corrections, Juvenile Division.

On appeal respondent does not challenge the sufficiency of the evidence but urges error because of (i) the failure of the court to suppress certain statements made by him prior to his being charged with murder; and (ii) the court's denial of his motion for a new evidentiary hearing on the motion to suppress made at the close of the State's evidence.

Mrs. Wilma Wright, respondent's aunt and legal guardian, was discovered murdered in her home between 2 and 3 p.m. on October 30, 1974. At the time respondent was living with his aunt. His mother was dead, and his father was either dead or his whereabouts were unknown. Shortly after the discovery of the deceased, a City of Chicago police officer, Ralph Storck, arrived at the scene to investigate. He then talked to the respondent on the back porch of the home. Later, about 6 p.m., the respondent was questioned by Storck at the police station and gave information leading to the arrest of Orlando Trimble. Around 8 p.m., after the police talked with Trimble, respondent was arrested and charged with the murder of Wilma Wright.

Prior to trial, respondent filed a motion for discovery which was answered by the State on November 27, 1974. On December 4, 1974, respondent filed a motion to suppress any and all confessions, statements or admissions he made prior to, during, or after his arrest. Prior to trial,

after a hearing on the motion, it was denied. The case proceeded to trial and the State presented its evidence, including the testimony of the investigating officer regarding statements made to him by respondent during the investigation and the testimony of the co-respondent, Orlando Trimble, incriminating respondent. At the close of the State's evidence, respondent moved for dismissal and for a new evidentiary hearing on the motion to suppress in light of the facts allegedly uncovered during the State's case which had not been known at the pretrial hearing. The court denied both motions. In his defense respondent presented only one witness, the investigating officer, and rested his case.

The trial evidence indicated that initially (at 3:30 p.m.) respondent told Storck he came home in the afternoon and, not being able to gain entry to the home, went to a nearby school to inform his cousin, Vernon Wright, Jr., who then rode respondent's bicycle home and respondent walked home, at which time the police were there. Later (about 6 p.m.) at the police station, respondent told Storck he wished to tell everything he knew, and then said he had seen Trimble leaving the house when he arrived home; that about two weeks before the incident, he and Trimble had discussed robbing and killing his aunt, but that he thought Trimble had forgotten. Respondent then accompanied the police officers to locate Trimble. Trimble, 15 years of age, was located, and upon being brought to the police station, admitted his part in the incident, that the respondent had asked him to help him kill his aunt whom he hated and offered Trimble half the money his aunt had, plus two pistols. Trimble testified that on the day of the incident the boys drank wine and beer and smoked marijuana; and that he could not perform the act, but did hit her on the head with a metal bar, and that respondent, with a knife, stabbed his aunt.

On December 23, 1974, the juvenile court found respondent to be delinquent based on his commission of the offense of murder. After a hearing held on January 8, 1975, respondent was committed to the Department of Corrections, Juvenile Division. Respondent's post-trial motions for a new trial and in arrest of judgment were denied.

## I.

Respondent contends that for the following reasons the court erred in failing to suppress the statements made by respondent prior to, at the time of, or subsequent to his arrest: (a) that a 16-year-old orphan could not knowingly and voluntarily waive his rights due to his age, level of understanding, and status as an orphan; and (b) that the absence of a parent, guardian or trusted attorney was in violation of the law.

In his written pretrial motion, respondent alleged that he was arrested in the afternoon hours of October 30, 1974, at his home and taken to the police station, and during the entire time he and others were in custody and interrogated; that prior to his interrogation he was not given his Miranda warnings, nor was he informed that he could not be questioned without the presence of a parent or guardian; that "any statement or confession or test  *  *  *  were the direct result of either physical or mental coercion"; and that the overall manner in which he was arrested, taken into custody and interrogated violated the guarantees of the "Illinois Juvenile Court Act and the Code of Criminal Procedure, and of the Constitutions of the State and of the United States *  *  *."

At the pretrial hearing on the motion, Officer Ralph Storck, called by the State, testified he was an investigating officer, that he was assigned to investigate the homicide of Wilma Wright on the afternoon of October 30, 1974, and about 3:15 p.m. spoke alone with respondent on the porch of that home, and that he did not give respondent any Miranda warnings at that time; and that Vernon Wright, Sr. and Vernon Wright, Jr. (the husband and son of the deceased) were both present.

Storck further testified that about 4:30 p.m.—on the day of the crime —he asked two Chicago police officers to bring the respondent to the Chicago Police Station, at 2138 North California, so that he could question him regarding some inconsistencies in the statements made earlier that afternoon; and that he did not charge or suspect respondent of the murder at that time. He testified that about 6 p.m. he talked with respondent alone at the police station; that he called respondent's uncle (the husband of the deceased) to inform him respondent was being questioned at the police station and requested the uncle come there; and that the uncle informed Storck he would call respondent's brother. Storck testified he advised respondent that he had a right to remain silent, and that anything he said could be used against him in a court of law. He also was advised of his right to have an attorney present, and of the State's obligation to provide an attorney if he and his family could not afford to pay one. Finally, he was informed that if he decided to tell the officer anything, he could stop at any time. Storck said that respondent affirmed that he understood each of these rights as they were explained to him, and then indicated that he would make a statement to the officer. Thereafter respondent accompanied Storck and Officer Melchiori in a police car to point out the house where Orlando Trimble could be found. According to Storck, respondent made no incriminating statements while in the car.

Storck further testified that a juvenile officer and an assistant State's

attorney arrived at the police station some time after 7 p.m.; that about 8 p.m., in the presence of the juvenile officer and respondent's brother, the assistant State's attorney advised the respondent of the Miranda rights, and at this time the respondent was not willing to make any statement; that he placed the respondent under arrest at about 8:30 to 9 p.m., although he acknowledged on cross-examination that his police report indicated the arrest was about 4:30 p.m. at the home of the deceased.

In support of the motion to suppress, the parties stipulated that respondent was questioned at his home about 3 p.m. and was given no Miranda warnings. Respondent testified he was later taken to the police station where he was questioned in a room with several police officers and was again given no warnings; and that he was at the station from about 4 p.m. to midnight. He testified the only person to advise him that day of his right to remain silent was the State's attorney. Based on the testimony of witnesses Storck and respondent, the court, stating that it was a question of the credibility of the witnesses, denied respondent's motion.

■■ The facts clearly indicate that at 6 p.m., when Storck questioned respondent, the latter was in custody. We must assume the investigation at this time started to focus on the respondent. Thus the threshold question is whether the proper procedural safeguard was taken in order to protect against self-incrimination. (See *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.) In such a situation, it must appear from the record that the respondent, prior to the 6 p.m. questioning had been sufficiently apprised of his constitutional rights under the Miranda rules, and that the respondent understood those rights and he knowingly and voluntarily waived those rights. The State must bear the burden of proving the admissibility of the statement on a motion to suppress. The voluntariness of the statement must be proved by a preponderance of the evidence (*People v. Sweet* (1st Dist. 1974), 17 Ill. App. 3d 85, 91, 307 N.E.2d 615) and not beyond a reasonable doubt. (*People v. Kemp* (1963), 29 Ill. 2d 321, 324, 194 N.E.2d 217.) The credibility of the witnesses regarding the voluntariness of the statement is to be determined by the trial court, and his determination will not be overturned unless it is contrary to the manifest weight of the evidence. *People v. Weger* (1962), 25 Ill. 2d 370, 374, 185 N.E.2d 183; *Sweet; People v. Gunn* (1st Dist. 1973), 15 Ill. App. 3d 1050, 1054, 305 N.E.2d 598.

As pointed out by the juvenile court in the case at bar, the question before the court was one of credibility. After listening to the two witnesses, the court concluded there was no reason to doubt the credibility of the police officer's testimony and denied the motion to suppress.

Therefore, the question before us is whether the juvenile court's finding is contrary to the manifest weight of the evidence. We find nothing in the record to justify disturbing the juvenile court's finding that respondent was adequately admonished concerning his constitutional rights before he waived his rights and answered questions. *Cf. People v. Johnson* (1973), 55 Ill. 2d 62, 70-71, 302 N.E.2d 20.

However, respondent contends he was not capable of waiving his Miranda rights since he was a 16-year-old orphan without adult counsel. Respondent argues the questioning of respondent was a violation of section 3—2 of the Juvenile Court Act which requires that notice be given to a parent or guardian when a juvenile is taken into custody. The statute requires the law enforcement officer, who takes a minor into custody without a warrant, to immediately make a reasonable effort to notify the parent or other person legally responsible for the minor's care that the minor is in custody and also notify the nearest juvenile officer. The record shows respondent's uncle was present when Storck talked to the respondent at the scene of the crime; that Storck called the uncle some time around 7 p.m.; that the uncle had known where respondent was; and that the uncle and brother (respondent's) came to the station.

■■ It is clear that juveniles are not free from police investigation and that the failure to have a parent or guardian present during questioning of a juvenile does not necessarily render statements made at that time inadmissible. (See *People v. Steptore* (1972), 51 Ill. 2d 208, 215, 281 N.E.2d 642; *People v. Zepeda* (1970), 47 Ill. 2d 23, 28, 265 N.E.2d 647; *People v. Murphy* (1st Dist. 1974), 17 Ill. App. 3d 482, 486, 308 N.E.2d 235.) The absence of adult counsel, respondent's age, family situation, and the fact respondent was a high school student are factors to be considered in determining, along with all of the evidence, the totality of the situation so as to determine the voluntariness of respondent's statements. Based on the totality of the evidence presented on respondent's motion to suppress, it is our opinion the juvenile court did not abuse its discretion in denying that motion. *Cf. People v. Horton* (1st Dist. 1970), 126 Ill. App. 2d 401, 261 N.E.2d 693.

Respondent urges that *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254, supports his position. Brown, during a police investigation, was arrested without probable cause and without a warrant. He made two inculpatory statements after constitutional warnings had been given. The trial court denied a pretrial motion to suppress, and the statements were used at trial resulting in Brown's conviction. The Illinois Supreme Court in affirming (56 Ill. 2d 312, 307 N.E.2d 356) noted the unlawfulness of the arrest, but held the Miranda

warnings served to break the causal connection between the illegal arrest and the giving of the statements. In reversing, the United States Supreme Court noted "[t]he question whether a confession is the product of a free will under *Wong Sun* [371 U.S. 471] must be answered on the facts of each case. No single fact is dispositive." (422 U.S. 590, 603.) It was further stated, "[w]e emphasize that our holding is a limited one. We decide only that the Illinois courts were in error in assuming that the *Miranda* warnings, by themselves, under *Wong Sun* always purge the taint of an illegal arrest." 422 U.S. 590, 605.

Here a crime had recently been committed, within three hours of the start of the investigation, while the police were investigating, and after first talking with the respondent at the scene of the crime, it was decided, due to inconsistencies in his story, that further questioning of the respondent was necessary. Custodial interrogation followed with the Miranda warnings given prior to the questioning. On the other hand, in *Brown*, one week after a murder had been committed, investigating officers, after receiving Brown's name as a suspect, broke into his apartment, searched it and then arrested Brown, all without probable cause and without a warrant. We do not think *Brown* controls. As stated recently by the United States Supreme Court in *United States v. Watson* (1976), 44 U.S.L.W. 4112, 4116, "[m]oreover, the fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search."

It is to be noted that the only evidence in the record as to why respondent was brought to the police station resulting in the 6 p.m. questioning, was Storck's testimony, on cross-examination by respondent's attorney, that he discovered inconsistencies in respondent's story. Respondent did not pursue this statement. As the police have a right— and duty—to investigate crimes, we do not find the circumstances of record in this case established an illegal arrest. *Cf. In re Lamb* (1975), 61 Ill. 2d 383, 387, 336 N.E.2d 753.

■■ In addition, it is to be remembered that this questioning did not follow either a prolonged period of custody or interrogation. The record is also silent as to evidence of any coercion or physical abuse. For all these reasons we find no error in the denial of the pretrial motion to suppress.

## II.

Respondent's second contention is the juvenile court erred in refusing to conduct a new evidentiary hearing on the motion to suppress made at trial. The motion was made at the conclusion of the State's case. The grounds for the motion as stated by counsel were:

"[A]s to the statement taken from the respondent minor, Terry Lee Bizzle—there was at the time he was taken into police custody and interrogated no probable cause for his arrest, based on the testimony of this officer as to the contents of the statement taken from Terry Bizzle at the scene on his porch. There was no reason pursuant to that conversation to take Terry to the police station and ask questions."

The original written motion to suppress prior to trial alleged "respondent was arrested in the afternoon hours of October 30, 1974 at his home and taken to the police station * * *." Respondent argues that in the pretrial hearing on the "motion to suppress the court refused to consider the content of all the statements made by the defendant to Chicago police officers but the court limited the pre-trial motion to suppress to statements the state intended to introduce in its case in chief."

Of course the purpose and scope of the pretrial motion is controlled by respondent's written motion. We have reviewed the written motion, the transcript of the pretrial hearing and fail to find any basis for suggesting the juvenile court improperly restricted or limited the respondent in presenting any evidence in support of his motion. The purpose of the pretrial motion was to determine whether any right of the respondent was violated so as to taint any statements or evidence secured as the result of the custodial interrogation.

Respondent, in his brief, states "[i]n the case at bar additional evidence adduced at trial presented the minor appellant and his counsel with entirely new grounds for suppression of the most damaging of all the minor appellant's statements: *the name and whereabouts of the star witness against him.*" (Emphasis supplied.) Other than the underscored statement, we have been unable to locate in respondent's brief—or the record—one scintilla of evidence that supports his statement. Referring to the underscored language, it is obvious the "star witness against him" was Orlando Trimble. The record shows that on November 27, 1974, the State filed its "Answer To Respondent's Motion For Discovery."[1] The answer lists as one of the possible witnesses, "Orlando Trimble, 5019 W. Superior Street, Chicago, Ill." This information was available two to three weeks prior to the pretrial hearing.

Respondent states that at the trial the evidence indicated there was

---

[1] The answer to the discovery, consisting of two pages, is quite complete with names of witnesses, persons who would testify as to oral statements, and the date, time and place of such statements, a list of physical property, and also listed "Orlando Trimble" as the witness to identify the respondent as the perpetrator of the crime.

no probable cause to take respondent into police custody. It is suggested this was new evidence. As we pointed out earlier in this opinion, Storck, while on cross-examination by respondent's counsel at the pretrial hearing, stated he had respondent brought into the station because of inconsistencies in his story. Respondent made no effort to followup this line of questioning, nor was he prevented from doing so by the court. Motions to suppress shall be made "* * * before trial unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion. If the motion is made during trial, and the court determines that the motion is not untimely, * * *." Ill. Rev. Stat. 1973, ch. 38, par. 114—11(g).

As noted above, respondent has pointed out nothing in the record that was either not known, or could not have been known by respondent before the hearing on the first motion to suppress. Especially is this apparent when one considers the State's answer to respondent's motion for discovery.

■■ As noted by the juvenile court, respondent presented no new evidence, and he may not be allowed to come in and argue a new theory on old evidence. The cases relied on by the respondent all clearly hold a party must show additional evidence unavailable at the first hearing on the motion, or peculiar circumstances to support a motion for a rehearing on a motion to suppress. *People v. Holland* (1974), 56 Ill. 2d 318, 321, 307 N.E.2d 380; *People v. Armstrong* (1973), 56 Ill. 2d 159, 161, 306 N.E.2d 14; *People v. Hopkins* (1972), 52 Ill. 2d 1, 3-4, 284 N.E. 2d 283.

Even assuming there is something in the record which supports the respondent's position, this court has held motions to suppress made at trial must be timely. (*People v. Bracy* (1st Dist. 1973), 14 Ill. App. 3d 495, 501, 302 N.E.2d 747.) Our review of the record indicates the trial motion was made at the close of the State's case, not at the time the so-called "new" evidence was first received. Therefore, respondent's motion was not timely.

The record does not disclose any new evidence unavailable at the first hearing nor does the record establish any special circumstances justifying a new hearing on the motion to suppress. The juvenile court properly denied that motion.

There being no dispute as to the sufficiency of the evidence, for the reasons set out herein, the judgment of the circuit court of Cook County, juvenile division is affirmed.

Judgment affirmed.

LEIGHTON and HAYES, JJ., concur.