THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THOMAS RILEY, Defendant-Appellant.

First District (2nd Division)    No. 76-230

Opinion filed May 17, 1977.

James Geis and Allen L. Wiederer, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Mary Ellen Dienes, and Wendy Paul Billington, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE DOWNING delivered the opinion of the court:

Following a jury trial, the defendant, Thomas Riley, was convicted of two counts of murder and one count of involuntary manslaughter. He was

sentenced to a term of not less than 75 years nor more than 225 years in the penitentiary for each count of murder and not less than three years nor more than ten years for the involuntary manslaughter count, all sentences to run concurrently. In this appeal, defendant contends that the trial court erred when it denied his motion to suppress a confession he gave to police following his arrest, and that the sentences imposed are excessive.

Shortly after 5 p.m. on February 27, 1974, the shotgun-riddled bodies of Larry Foster, Marvin Foster, Jr., and William Todd were found on the grounds of Burr Oak Cemetery in south suburban Alsip, Illinois. Police reporting to the scene interviewed two youths who had seen two male Negroes, one tall and one short, running from the cemetery shortly after the sound of gunshots was heard.

Shortly thereafter, a police officer observed two black youths answering the descriptions attempting to hitch a ride in an industrial area a few blocks from the cemetery. At that moment, a car stopped, and the two youths got in. The police officer stopped the car and ordered the occupants out of the car. When they got out, the officer observed that the two youths had mud on their shoes and on the bottoms of their trouser legs. One of them also had a number of "cockleburrs" on his trouser legs. Earlier, when he had reported to the scene of the killings, the officer had observed that the cemetery grounds were quite muddy and that cockleburr plants grew there in abundance. He also observed that there was no mud in the area where he stopped the youths. The officer then arrested the two youths, the defendant and his older brother.

Defendant and his brother were returned to the scene of the killings and detained in a police car for a period of approximately 1½ hours, while the police investigation continued. Two weapons were found on the cemetery grounds, a sawed-off shotgun and a long-barrelled shotgun. A yellow stocking cap, which it was later determined belonged to defendant, was also found.

Defendant and his brother were then taken to the Alsip police station where they were held in adjoining cells for questioning. Their outer clothing (shoes, trousers, and shirts) were removed by police evidence technicians. They were given blankets to cover themselves. They were each fed a chicken dinner. Their constitutional rights were read to them. Defendant was asked his age, and he responded that he was 17 years old. On further inquiry, he revealed that he was going to be 17 in about a week. To ascertain his correct age, police then called defendant's parents. Both informed police defendant was 17.

Defendant's father arrived at the police station at approximately 7:30 p.m. There is conflicting testimony as to whether he asked to see his sons. In his testimony, the father maintained that he had made repeated requests to the police to see his sons, but was refused. Several police

officers testified that the father did not ask to see his sons. One also testified that he specifically asked the father if he wanted to see his sons, and that Mr. Riley had declined.

At about 8:30 p.m., after he had once again been advised of his constitutional rights and indicated his understanding of those rights, defendant gave an oral statement to police investigators, admitting the three killings. Sometime later that same evening, he was, for the third time, advised of his rights and repeated his statement before an assistant State's attorney and a court reporter. After the statement was transcribed and signed by defendant, his brother also gave a statement.

Briefly, defendant's confession related that he had gone to the cemetery with his brother to look for a job (defendant's brother and father had both previously worked at the cemetery). They went into a small house on the cemetery grounds where they met their friends Larry Foster and Marvin Foster. The four then smoked marijuana and consumed amounts of brandy, whiskey, and beer. At some point, defendant's brother and Marvin Foster left the room. Then Larry aimed a sawed-off shotgun at defendant. Defendant asked him not to do that. Larry then put the gun down and went into the next room. Defendant then picked up the gun. When Larry returned, the gun accidentally discharged, killing Larry.

After the shooting, William Todd entered the room. Seeing defendant with the sawed-off shotgun, Todd fled to the cemetery office next door to the house and locked himself inside. Defendant picked up a long-barrelled shotgun which was leaning against a wall in the house, and pursued Todd with both weapons. He shot the lock off the door of the office where Todd was hiding, and shot him to death. At that moment, Marvin Foster, Jr., entered the office and, seeing what had occurred, also fled. Defendant pursued Marvin Foster out onto the cemetery grounds and ordered him to stop. Foster stopped, turned around, and was then shot to death by defendant. Defendant's brother, who had been driving around the cemetery grounds in a car, rejoined him and saw what had happened. Defendant used his hat to wipe both weapons clean of fingerprints, and hid the weapons in some bushes. The Riley brothers then ran from the scene.

Defendant was subsequently indicted for the murders of the three men. Prior to trial, defense counsel moved to suppress defendant's confession, alleging that the defendant had not knowingly and intelligently waived his constitutional rights and had, in effect, requested counsel prior to giving any inculpatory statements. It was urged that the defendant's desire for legal counsel was manifested by a request that he be allowed to speak with his father. Following a lengthy hearing, the motion was denied. Defendant was then tried by a jury which found him guilty of the murders of William Todd and Marvin Foster, Jr., and guilty of the lesser-

included offense of involuntary manslaughter in causing the death of Larry Foster.

## I.

The foremost issue raised by defendant in this appeal is whether the trial court erred in denying his motion to suppress the confession. The defendant contends that subsequent to being advised of his rights under the *Miranda* doctrine (*Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602) and prior to his giving his confession, he effectively asserted his fifth amendment privilege against self-incrimination and his sixth amendment right to counsel by making a request to the police that he be permitted to speak with his father, who was present in the police station. Defendant argues that the request of a juvenile defendant to see a parent is tantamount to an adult's request for an attorney, and that under *Miranda*, once such a request has been made, the interrogation must cease until the defendant has been afforded the opportunity to consult with counsel. The evidence in the record on the issue of whether or not the defendant actually made such a request is in conflict.

In *Miranda*, the United States Supreme Court held that where one who is the focus of a criminal investigation is subjected to an in-custody interrogation, and indicates in any manner, at any time, prior to or during questioning that he wishes to remain silent, or that he wants to consult with an attorney, the interrogation must cease until an attorney is present (384 U.S. 436, 473-74, 16 L. Ed. 2d 694, 723, 86 S. Ct. 1602.) However, *Miranda* also holds that if the interrogation continues without the presence of an attorney and a statement is ultimately taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to counsel.

In his briefs and arguments before this court, defendant has failed to cite, nor has our own research discovered, any authority that in Illinois the request of a juvenile in police custody to see a parent is *per se* tantamount to an adult's request to consult with an attorney. The only case cited by defendant in support of this proposition is *People v. Burton* (1971), 6 Cal. 3d 375, 491 P.2d 793, 99 Cal. Rptr. 1, in which the California Supreme Court held that when a minor is taken into custody and is subjected to interrogation, without the presence of an attorney, his request to see one of his parents, made at any time prior to or during questioning must, in the absence of evidence to the contrary, be construed to indicate that the minor suspect desires to invoke his constitutional rights and that the interrogations must then cease. We are satisfied that the record in this case, and the findings of the trial court in its ruling denying defendant's

motion to suppress his confession amply demonstrate that defendant was not, by requesting to see his father, asserting his constitutional rights.

■■■ The rule in Illinois is that, in determining whether a defendant has knowingly and intelligently waived his constitutional rights, the state bears the burden of demonstrating, by a preponderance of the evidence (*In re Bizzle* (1st Dist. 1976), 36 Ill. App. 3d 321, 325, 343 N.E.2d 633; *People v. Sweet* (1st Dist. 1974), 17 Ill. App. 3d 85, 91, 307 N.E.2d 615; *People v. Jackson* (1968), 41 Ill. 2d 102, 109, 242 N.E.2d 160), that the statement was made freely, voluntarily, and without compulsion or inducement of any sort and that the defendant's will was not overcome at the time he confessed (*People v. Hester* (1968), 39 Ill. 2d 489, 497, 237 N.E.2d 466). An express waiver of the right to counsel is not necessary. The test is that there be a showing of a knowing intent to speak without counsel. Once the defendant has been informed of his rights and indicates that he understands those rights, his choosing to speak and not requesting a lawyer is sufficient evidence that he knows his rights and chooses not to exercise them. (*People v. Brooks* (1972), 51 Ill. 2d 156, 164, 281 N.E.2d 326.) In *In re Bizzle*, this court considered the claim of a 16-year-old juvenile that he was incapable of waiving his constitutional rights because he was without adult counsel during the interrogation. There, we stated:

"It is clear that juveniles are not free from police investigation and that the failure to have a parent or guardian present during questioning of a juvenile does not necessarily render statements made at that time inadmissible. (See *People v. Steptore* (1972), 51 Ill. 2d 208, 215, 281 N.E.2d 642; *People v. Zepeda* (1970), 47 Ill. 2d 23, 28, 265 N.E.2d 647; *People v. Murphy* (1st Dist. 1974), 17 Ill. App. 3d 482, 486, 308 N.E.2d 235.)" 36 Ill. App. 3d 321, 326.

The finding of the trial court that under the totality of the circumstances a confession was voluntary, will not be disturbed unless contrary to the manifest weight of the evidence. *People v. Prim* (1972), 53 Ill. 2d 62, 70, 289 N.E.2d 601, *cert. denied*, 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731; *In re Bizzle*, at 325.

At the hearing on defendant's motion, Sergeant John Reed testified that he began to question defendant at 8 p.m. on February 27, 1974. He advised defendant of his rights, and defendant told him that he understood. In fact, defendant volunteered that he had already twice been advised of his rights, and defendant told him that he understood. When Reed asked defendant his age, his first response was that he was 17. Then he stated that he would not be 17 for a week or eight days. At that point, Reed stopped the interrogation and enlisted the aid of youth officers Barry Jackson and James Houlihan to ascertain the defendant's true age. They in turn contacted defendant's parents, both of whom said

that defendant was 17. Satisfied that defendant was 17, Reed continued the questioning at approximately 8:30 p.m., and the defendant then made an oral statement admitting the three killings. When asked if he would give a written statement, defendant indicated that he would. An assistant state's attorney and a court reporter were brought in, and defendant was again advised of his rights. The defendant then gave a written statement. Both Reed and the other police officers present denied that the defendant ever made a request to see his father or that his father had asked to see him.

Defendant's father, Ernest Riley, Sr., testified that he continually asked to speak with his sons from the time he arrived at the station.

Defendant, testifying in support of his motion, acknowledged that he had been advised of his rights on at least three occasions prior to giving his confession and that on each occasion he had said that he understood. Defendant maintained that at one point prior to giving any statement, he had asked to see his father.

In stating his detailed findings, the trial judge stated that he assumed, for purposes of his ruling, that the defendant's testimony that he had requested to see his father was truthful; and that under the totality of the circumstances, in his opinion, the defendant had knowingly and intelligently waived his constitutional rights. He found that the defendant's parents were promptly notified, and that both had said that defendant was 17 years old. He found that the defendant had been advised of his rights several times, and that each time defendant had said he understood. In the trial court's opinion, it was illogical for defendant to assert that his desire to see his father was a manifestation of a desire for legal counsel because the evidence showed that defendant did not look to his father to supply his life's needs. He was living with, and was supported by, his older brother Ernest. The trial court attached some significance to the fact that defendant and his brother were able to communicate with each other while in custody in the Alsip police station, and that at no point did Ernest demand an attorney. The trial court found that in obtaining the statement, the police paid meticulous attention to the requirements of the law.

■■ We cannot say that the conclusions of the trial court were contrary to the manifest weight of the evidence. Defendant, only a week away from his 17th birthday, was advised of his constitutional rights on at least three occasions while in custody of the Alsip police. Each time, he stated that he understood their significance. Following these admonitions, defendant gave his confession. This is not a case in which a confession has been obtained by coercive police tactics (see *Haley v. Ohio* (1948), 332 U.S. 596, 92 L. Ed. 224, 68 S. Ct. 302; *Gallegos v. Colorado* (1962), 370

U.S. 49, 8 L. Ed. 2d 325, 82 S. Ct. 1209), which have been, and are, universally condemned. This is a case in which the police meticulously observed the law. The only conclusion which may be drawn from the evidence contained in this record is that if the defendant had desired the advice of an attorney, he would have asked for one.

■■ This opinion shall in no event be construed as stating a general rule that a juvenile in custody for questioning by the authorities who asks to speak with a parent is not asserting his constitutional rights. As the Second District of this court has stated:

"* * * [A]s as matter of good practice special precaution should be taken to insure that juveniles understand their rights and how to exercise them and that it would be preferable to make sure, whenever possible, that a parent or guardian is present when a juvenile waives his rights. In a close case the failure to follow this procedure may result in a finding that under the totality of the circumstances the waiver is ineffective." *In re Stiff* (2d Dist. 1975), 32 Ill. App. 3d 971, 978, 336 N.E.2d 619.

Accordingly, in our opinion, the finding of the trial court denying defendant's motion to suppress statements was not contrary to the manifest weight of the evidence.

■■ Defendant also contends that the State has failed to carry its burden of showing a knowing and intelligent waiver because the state did not prove, as it is required to do under *People v. Prude* (5th Dist. 1975), 32 Ill. App. 3d 410, 416, 336 N.E.2d 348, that the defendant was aware, or that he was made aware prior to giving his statement, of the possibility of his prosecution as an adult. This contention is without merit. In his testimony at the hearing on the motion, Sergeant Reed testified that after the youth officers had been informed by defendant's parents that he was 17, he told defendant that the police would proceed against him as an adult. Clearly the state has met its burden in this regard.

## II.

Defendant finally contends that the concurrent sentences of 75 to 225 years imprisonment imposed after his conviction are excessive in light of the facts that defendant was only 16 years old at the time of the offenses and had no previous arrest record.

We recently reviewed the issue of excessive sentencing in *People v. Craig* (1st Dist. 1977), 47 Ill. App. 3d 242, 361 N.E.2d 736. There, we noted that there are many factors to be considered by the trial judge in exercising his broad discretion in passing sentence. Included among these are the nature and circumstances of the offense, the history, character, and condition of the defendant, the protection of the public, and the

possibilities for rehabilitation. No single factor is, *per se*, to be paramount in the judge's decision. We also noted in *Craig* the declining importance of the possibility for rehabilitation in today's sentencing philosophy.

■■ The crimes for which defendant was convicted were of a particularly brutal nature and demonstrate the most callous indifference to the sanctity of human life. In our opinion the trial court did not abuse his discretion in imposing these sentences.

For the above reasons, the judgment and sentences of the circuit court of Cook County are hereby affirmed.

Affirmed.

STAMOS and PERLIN, JJ., concur.