THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANDREW HARPER (Impleaded), Defendant-Appellant.

(No. 55231;

First District (3rd Division)—December 6, 1973.

James J. Doherty, Public Defender, of Chicago (Stanley Sacks and Ian Levin, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis, Roger Horwitz, and Daniel Murray, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Andrew Harper and John Holmes, Jr. were jointly indicted and tried for the murder of Jake Allen. A jury trial resulted in verdicts of guilty of that crime and sentences of death. On direct review the Illinois Supreme Court reversed the convictions and remanded the cause for a new trial. (*People v. Harper* (1967), 36 Ill.2d 398, 223 N.E.2d 841.) The court held that the cause must be remanded for the purpose of a new hearing on defendants' motion to suppress their confessions. A second jury trial for the same offense also resulted in guilty verdicts of murder, and each defendant was sentenced to 30 to 50 years. Harper brings this appeal, again contending that the court erred in admitting his confession because it was coerced. He also argues that no probable cause existed for his arrest. (Holmes also appealed, but subsequently escaped from custody, and his appeal has been dismissed.)

Jake Allen's body was found in an alley in Chicago on the morning of January 10, 1963. He had been killed by a bullet fired from a .22 caliber revolver. Harper and Holmes were arrested at 2:45 that afternoon and searched. Holmes had a loaded .22 caliber revolver, additional shells, and a watch and automobile keys belonging to the deceased. Harper had a revolver and the deceased's wallet.

Both men were taken to a police station and at 4:00 P.M. orally admitted murdering the deceased. At 8:00 P.M. the same evening both men confessed the murder to an assistant State's Attorney and a court reporter. The following morning Harper and Holmes signed the confessions and voluntarily testified concerning the murder at a coroner's inquest.

In their statements Harper and Holmes said that they had asked the deceased for a ride. At a stop sign they pulled guns and took the deceased's watch and wallet. After the deceased attempted to conceal some money he was ordered out of his car and was shot. Harper and Holmes were first brought before a judicial officer 21 days after their arrests.

We shall initially consider Harper's contention that his confession was coerced and improperly admitted into evidence. In *Harper*, our Supreme Court held that, although Harper and Holmes were not informed of their constitutional rights prior to their confessions, as required by *Escobedo v. Illinois* (1964), 378 U.S. 478, 12 L.Ed.2d 977, 84 S.Ct. 1758, and *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602, those principles did not govern this case because the first trial antedated the decisions. The court held that, under the rule established in *People v. Hartgraves* (1964), 31 Ill.2d 375, 202 N.E.2d 33, *cert. den.* (1965), 380 U.S. 961, 14 L.Ed.2d 152, 85 S.Ct. 1104, defendants' confessions need

not be set aside on the ground of failure to advise them of their right to counsel. The court also pointed out that Illinois has not adopted the federal *McNabb-Mallory* rule which renders a confession per se inadmissible where there has been an unnecessary delay in presenting a defendant to a judicial officer, and that therefore the 21 day delay in the present case did not render the confession inadmissible. The court, however, held that in view of the long delay which intervened from the defendants' arrest to the time of their presentment to a magistrate, the admitted bleeding of Holmes, the lack of medical explanation for the bleeding, and the failure of the State to call as witnesses two of the five police officers who witnessed the confessions, a fuller hearing on the motion to suppress the confessions was necessary to render a careful and judicious ruling.

After remand, the trial court conducted another hearing on the motion to suppress the confession. Harper testified at the hearing that he and Holmes were continuously threatened and beaten by several police officers during the interrogation at police headquarters as they sat hand-cuffed to a radiator. Harper admitted that he suffered no cuts or bruises as a result of the beatings, but maintained that he suffered excruciating pain. Harper also stated that he made the statements to the assistant State's Attorney and at the inquest because the police officers who had beaten him were present at the sessions and he was fearful of police retaliation if he withdrew his statements. Holmes testified to similar treatment at the hands of the police and contended that the beatings caused him to spit up blood prior to his confession. Both men testified that they complained of the treatment to a doctor in jail.

All five of the police officers who witnessed the confessions testified at the second hearing on the motion to suppress the confessions. The officers admitted that Harper and Holmes were handcuffed to a radiator during the interrogation, but asserted that the two men were well-treated at all times, and denied that any coercion was applied. The police testified that Holmes spit up blood prior to his confession, but they stated that Holmes explained to them at the time that he suffered from an ulcer or a nervous stomach. The police also testified that Holmes told them he had drunk a bottle of whiskey the previous night.

The assistant State's Attorney and court reporter testified that both Harper and Holmes answered affirmatively when asked by the prosecutor if they were being well-treated, and both witnesses said that neither man bore noticeable cuts or bruises indicating any beatings.

The prison doctor who admitted Harper and Holmes to jail testified at this hearing on the motion. The doctor examined both men from the waist up on the day after the alleged beatings took place. The doctor

testified that his records revealed that the two men bore no noticeable lacerations or bruises on their bodies other than two lacerations on Harper which had already healed. The doctor also testified that neither Harper nor Holmes complained to him concerning their treatment by the police.

Holmes' prison medical records were introduced into evidence. They failed to disclose any ulcer complaints or blood expectorations by Holmes in the seven years he was in prison awaiting retrial.

■■ At the second hearing on the motion to suppress the confession, all five police officers who witnessed the confessions testified and rebutted the allegations made by Harper and Holmes. Additionally, the doctor who examined both men the day after they claimed to have been beaten testified that they had no fresh lacerations or bruises and bore no signs of having been beaten. The doctor also stated that the two men made no complaint to him about mistreatment by the police. The testimony concerning the voluntariness of the confessions was conflicting and, in such cases, it is the duty of the trial court to determine the voluntariness of the confessions based upon the preponderance of the evidence. (*People v. Golson* (1965), 32 Ill.2d 398, 207 N.E.2d 68, *cert. den.* (1966), 384 U.S. 1023, 16 L.Ed.2d 1026, 86 S.Ct. 1951.) The fact that the trial judge can observe the demeanor of the witnesses supports the principle that his decision in a case involving conflicting testimony will be sustained on appeal unless it is obviously erroneous. (*People v. Colbert* (1973), 10 Ill.App.3d 758, 295 N.E.2d 225.) The trial court complied with the Supreme Court's mandate by conducting a fuller hearing on the voluntariness of the confessions. The State offered the testimony of three witnesses, two police officers and a doctor, who had not testified at the first hearing. And importantly, the examining doctor testified that neither Harper nor Holmes bore fresh lacerations or bruises, and made no complaint to him about police mistreatment. Although Holmes' prison medical records did not disclose ulcers or a nervous stomach, that evidence clearly was not conclusive of the issue of voluntariness and should not outweigh the other very important evidence in support of the State's contention that the confession was voluntary. The trial court properly held that Harper's confession was not coerced, and correctly admitted it into evidence.

Harper also contends that no probable cause existed for his arrest, and that therefore the trial court erred in denying his motion to suppress the evidence, including his confession.

On December 21, 1962, the police investigated an aggravated battery committed upon Velma Glenn. Miss Glenn informed the police that as she was parking her car at approximately 10:30 P.M. that evening in

front of her home located at 9526 South Lowe Avenue in Chicago, she observed two men walk abreast of her car. One of the men, later identified as Holmes, approached the driver's side of the car and asked her where the Muse family lived. Miss Glenn replied through her closed window and locked door that they lived two doors south, later determined to be 9530 South Lowe Avenue. When Miss Glenn refused the man's request to roll down the window, he pulled out a gun and shot through the glass, wounding her in the shoulder. Both men then proceeded to run south and through the gangway at about 9530 Lowe. Miss Glenn provided a description of the man who shot her, but was unable to give the police a description of the man who remained on the sidewalk.

The police officer who originally responded to the shooting went to the Muse home and examined its exterior. He discovered that an outside basement window screen had been tampered with in an apparent attempt to remove it. When his findings were reported to the investigating officer, the latter went to the Muse home some time after midnight. He found two young boys, aged nine and eleven, alone inside, and was unable to get any information from them. When the officer subsequently returned to the Muse home, he spoke to Mr. Muse. Muse informed the police officer that he had learned from his two boys that Harper and Holmes, both distant relatives, came into the Muse home about the time of the Glenn shooting, changed clothes, and left through the back door. Several days later the police showed photographs of Harper and Holmes to the two Muse children and Miss Glenn. The boys identified Harper and Holmes as the men who came to their home on the evening in question. Miss Glenn was only able to identify Holmes.

As a result of their investigation, the police, on December 27, 1962, issued a "stop order" for both men. At the hearing on the motion, several police officers described a stop order in essence to be a directive for any police officer to arrest the person named therein.

On January 9, 1963, Lieutenant Kelly of the Chicago Police Department received an anonymous telephone call informing him that "Harper and Holmes were wanted for numerous robberies" on the West Side of Chicago and that both men would be at a west side welfare office on the following day. Lieutenant Kelly's information was relayed to another police officer who thereupon conducted a name check on both men and learned that the two men were wanted for the aggravated battery of Miss Glenn. The police staked out the welfare office the following day and arrested both men without warrants. After Harper and Holmes were taken to the police station, Miss Glenn signed complaints against them for aggravated battery, but they were never prosecuted for that charge.

In addition to having certain property of the deceased on their person at the time of their apprehension, it was later learned that Harper and Holmes drove to the welfare office in the deceased's automobile. The trial court ruled that probable cause did exist for the arrest of Harper and Holmes and denied their motion to suppress the evidence.

Harper contends that the stop order issued by the police regarding the shooting of Miss Glenn and the anonymous phone tip to Lieutenant Kelly were insufficient to create probable cause that he had violated the law and to justify his arrest without a warrant.

■■■ A police officer may arrest a person without a warrant as long as he has reasonable grounds to believe the person is committing or has committed an offense (Ill. Rev. Stat. 1965, ch. 38, par. 107—2(c)). The quantum of proof needed to establish probable cause is less than that required to sustain a conviction at trial. (*People v. Novak* (1965), 33 Ill.2d 343, 211 N.E.2d 235, *cert. den.* (1966), 384 U.S. 1016 16 L.Ed.2d 1037, 86 S.Ct. 1980.) The test of probable cause is whether a reasonable and prudent man in possession of the knowledge which has come to the arresting officer's attention would believe the person to be arrested is guilty of the crime. *People v. Macias* (1968), 39 Ill.2d 208, 234 N.E.2d 783, *cert. den.* (1969), 393 U.S. 1066, 21 L.Ed.2d 709, 89 S.Ct. 721.

■■ In light of the above criteria, we believe that the stop order issued by police concerning the aggravated battery to Velma Glenn provided a sufficient basis for establishing probable cause for the arrest of Harper. Glenn's assailant, later identified by her as Holmes, was accompanied by a man subsequently established to have been Harper. Holmes asked Miss Glenn the location of the Muse home, which was just two doors south of the location of the shooting. Miss Glenn observed the two men run south into the Muse gangway. Shortly after, a police officer found that a basement screen window in the Muse home had been tampered with in an attempt to remove it. Subsequently the police learned that Harper and Holmes had entered the Muse home together at about the time of the shooting, changed clothes, and left through the back door together. Whether or not the above facts would sustain a conviction of Harper for aggravated battery, his proximity in time and place to the shooting and the circumstances surrounding the events immediately after the shooting of Miss Glenn clearly were enough to establish probable cause for the police to arrest Harper and to conduct a search of his person incident to that arrest. *People v. Robbins* (1967), 88 Ill.App. 2d 447, 232 N.E.2d 302, *cert. den.* (1968), 393 U.S. 916, 21 L.Ed.2d 202, 89 S.Ct. 244.

In view of our holding that the stop order and its attendant circum-

258

stances did establish probable cause for Harper's arrest, it is unnecessary to discuss his contention that the anonymous telephone call to Lieutenant Kelly did not establish probable cause for the arrest.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

DEMPSEY, P. J., and McGLOON, J., concur.