THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
BOBBY GREEN, Defendant-Appellant.

First District (1st Division)   Nos. 79-1842, 80-0335 cons.

Opinion filed September 15, 1980.

Leonard Karlin, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Mary Ellen Dienes, and Lawrence T. Krulewich, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

After a jury trial, Bobby Green (defendant) was found guilty of an armed robbery on January 28, 1978 (Ill. Rev. Stat. 1975, ch. 38, par. 18—2). After a bench trial he was also found guilty of another armed robbery on January 31, 1978. He was sentenced to two concurrent terms of 9 years and a fine of $1000. His appeals have been consolidated.

The incident of January 31, 1978, was tried first. Harry Nash and William Veal were employees of a gasoline station in Chicago. Nash arrived for work that day about 6 p.m. A few minutes later Nash entered the station and saw Veal held at gunpoint. Nash and Veal both identified defendant as the person holding the gun. Nash remembered defendant had robbed the station on January 28 with use of the same gun. Defendant took business receipts from Veal and also his personal money. Defendant ordered the men to lie down on the floor as he had ordered Nash during the previous robbery of January 28. During this earlier robbery, Veal was not present. On that occasion, at defendant's request, Nash permitted him to remain in the station for 10 or 15 minutes to warm himself. Defendant left, then returned and committed the robbery.

On February 11, 1978, Investigator Charles Ford showed a series of eight photographs to Nash and Veal. Both of them selected and identified

the picture of defendant. Thereafter, both men identified defendant in a police lineup.

For the defense, Michael Penny testified he went to the station on January 28, 1978. He lost $150 there in a dice game being operated by Nash. He saw no police while he was there. Leotis Brewer testified he was with defendant at a party all evening on January 28, 1978. Audrey Thomas testified she was at a party with defendant on January 28 at the time of the robbery. This testimony concerning the party was corroborated by Judy Jordon, defendant's sister, and Stella Green, defendant's wife.

Nash testified in rebuttal there was no gambling at the station on January 28, 1978. Police officer Darragh testified he came to the gasoline station on January 28 and saw no one there other than Nash.

After trial on the armed robbery of January 31, the parties entered into a written stipulation. This document stated the pendency of the two indictments and the return of the verdict of guilty after trial of the January 31 robbery. The parties agreed defendant would execute a jury waiver, which he did. The parties stipulated the State would produce the same witnesses who testified in the previous case and their testimony would be substantially the same. Further cross-examination of the witnesses was waived. The report of proceedings in the prior trial was adopted for the January 28, 1978, case so far as relevant. The parties reserved the right to present additional evidence. Defendant waived no further rights of any kind. Judgment and sentence would be final and appealable without post-trial motions and without waiver of objections.

## I.

Defendant made a pretrial motion to quash the arrest. Investigator Charles Ford testified he interviewed Nash and Veal at the gasoline station after the January 31 robbery. They gave him a description of the robber including prominent facial scars. Thereafter, Investigator Ford spoke to Officer Steel. He suggested that defendant fit this description. Ford then selected eight photographs, including that of defendant, and displayed them to the victims. As a result of their photographic identification, he issued a "stop order" for the defendant.

During the early morning hours of March 4, 1978, Police officers Stasinopulos and Wiora saw defendant driving an automobile. At that time they were looking for defendant because of the stop order. Stasinopulos recognized defendant as the man whose picture had appeared in a police bulletin. Defendant's car was stopped. Officer Wiora testified when defendant's car was stopped, he saw the gun sticking out of the rear seat on the driver's side in plain view.

Defendant was charged at the station after the arrest with unlawful

use of weapons, but this charge was dropped by the State. On this record defendant urges there was no probable cause for his arrest.

It has been frequently held probable cause depends upon whether the subjective knowledge of the arresting officer would be " 'sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense.' " (*People v. Creach* (1980), 79 Ill. 2d 96, 101, 402 N.E.2d 228, quoting *People v. Robinson* (1976), 62 Ill. 2d 273, 276, 342 N.E.2d 356, and other authorities there cited.) Existence of probable cause depends upon the totality of the circumstances as viewed under practical considerations of every day life from the point of view of reasonable men. (See *Creach*, 79 Ill. 2d 96, 102.) The existence of probable cause may be founded upon evidence which would not be admissible at trial and which need not be sufficient to establish guilt beyond a reasonable doubt. *People v. Blitz* (1977), 68 Ill. 2d 287, 292, 369 N.E.2d 1238, *cert. denied* (1978), 435 U.S. 974, 56 L. Ed. 2d 68, 98 S. Ct. 1622.

■■ Applying these principles to the case before us, we are required of necessity to conclude probable cause existed and the arrest of defendant was legally proper.

## II.

■■ Defendant urges lack of evidence of guilt beyond a reasonable doubt. We disagree. The evidence of the two victims of the holdup is strong and convincing beyond reasonable doubt. We have here an unassailed and proper identification by photographs and also by a lineup. All of the tests of a proper identification are satisfied here beyond reasonable doubt. (See *People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513; also *People v. McKinley* (1977), 69 Ill. 2d 145, 152, 370 N.E.2d 1040.) Both of these witnesses had a more than ample opportunity to view the defendant. This is particularly true in the case of Nash, who was a victim of both armed robberies and who had a truly excellent opportunity to view defendant.

■■ As regards the issue of alibi, the trier of fact was not obliged to disregard positive identification testimony in order to believe the testimony of defendant's alibi witnesses. The issue here was strictly one of credibility for the trier of fact. See *People v. Berland* (1978), 74 Ill. 2d 286, 307, 385 N.E.2d 649, *cert. denied* (1979), 444 U.S. 833, 62 L. Ed. 2d 42, 100 S. Ct. 64; *People v. Brown* (1972), 52 Ill. 2d 94, 105-06, 285 N.E.2d 1.

## III.

Defendant urges improper evidence was received at trial. Defendant made a written motion to suppress the gun found by police in his car on the ground of illegal seizure. However, defendant did not make this motion

until after the commencement of trial. The trial court denied the motion on the ground among others that the defendant had "more than adequate opportunity for many months" to present the motion. The pertinent statute provides the motion is to be made "before trial unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion." Ill. Rev. Stat. 1979, ch. 38, par. 114—12(c). See also *People v. Kahl* (1978), 63 Ill. App. 3d 703, 706, 380 N.E.2d 487.

■■ However, on the merits of the situation, we find the gun was properly seized after the arrest. The arresting police officers had probable cause to stop defendant's car and to arrest him. As shown, defendant was recognized from his picture in the police bulletin. The stop was made after midnight and the police knew defendant was sought for armed robbery. Under these circumstances, the arresting officers had full right to insure their own safety by making a search for weapons which might be found within reach of the suspect. See *People v. Cannon* (1974), 18 Ill. App. 3d 781, 785, 310 N.E.2d 673, *appeal denied* (1974), 56 Ill. 2d 588, citing *People v. Perry* (1971), 47 Ill. 2d 402, 407-08, 266 N.E.2d 330, which in turn cites and comments upon *Chimel v. California* (1969), 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034.

■■ In considering this type of motion to suppress physical evidence, this court is bound to accept the ruling of the trial court "unless it is clearly unreasonable." (*People v. DeMorrow* (1974), 59 Ill. 2d 352, 358, 320 N.E.2d 1.) The burden of establishing the illegality of the search and the responsibility "for establishing the factual and legal bases for the motion to suppress" rests upon defendant. (*People v. Berg* (1977), 67 Ill. 2d 65, 68, 364 N.E.2d 880.) We conclude the motion to suppress was properly denied and the trial judge properly received the gun in evidence.

■■ In this area, defendant also contends reversible error because during the trial of the January 31 armed robbery the evidence also showed in part the commission of the previous acts of January 28. We find no error in this regard. It is true the offense of January 31, 1980, was tried first and a stipulation was used in connection with the subsequent offense. However, even regarding these offenses as factually and legally separate, the courts of Illinois have consistently held evidence which shows the accused has committed a crime other than the one on trial is proper when it " 'goes to show motive, intent, identity, absence of mistake or *modus operandi* ' " even though " 'it may show the commission of a separate offense.' " (*People v. Romero* (1977), 66 Ill. 2d 325, 330, 362 N.E.2d 288, quoting *People v. McDonald* (1975), 62 Ill. 2d 448, 455, 343 N.E.2d 489.) In fact, it has been stated that such evidence of other offenses which is relevant "for any purpose other than to show propensity to commit a crime" is admissible. (*People v. Baptist* (1979), 76 Ill. 2d 19, 27, 389 N.E.2d 1200.) We reject these contentions.

## IV.

■■ The trial court excluded evidence tendered by defendant to the effect that the eyewitnesses Nash and Veal were engaged in gambling activities at the gasoline station. In our opinion, evidence of this type was neither relevant nor probative. This type of evidence would not make the issue of the guilt of defendant more or less probable. (*People v. Monroe* (1977), 66 Ill. 2d 317, 321, 362 N.E.2d 295.) This type of evidence was completely immaterial. In addition, Michael Penny, a defense witness, did testify regarding gambling at the station and the activity of the witness Nash in this regard. This ruling of the trial court was legally proper.

## V.

■■ Defendant contends the jury was improperly instructed. The trial judge gave the jury Illinois Pattern Jury Instructions, Criminal, No. 3.14 (1968) (hereinafter IPI) regarding evidence of another crime, which is to be received for a limited purpose only. Defendant cites no authority in this regard. We find the instruction was proper.

Defendant also objects to the instruction defining circumstantial evidence and instructing the jury in this regard. (IPI Criminal No. 3.02.) There was no direct evidence that the gun which was found in defendant's automobile matched the description given by the victim as having been used in the crime. Of necessity this evidence is circumstantial regarding the use of the weapon in the crime. Accordingly, we find no error in this regard.

## VI.

After conviction of defendant on the robbery of January 31, 1978, the trial judge revoked defendant's bail. After defendant was sentenced and on November 9, 1979, defendant filed a petition for bail in this court. The People objected to allowance of bail. Upon examination of all of the matters before us, this court denied defendant's bail application.

In this court defendant now presents the novel contention that by denying bail after conviction the trial court lost the legal power to impose any sentence of any kind upon defendant. Defendant urges denial of bail after conviction and his incarceration were tantamount to punishment so that the imposition of sentence upon him thus constituted double jeopardy. No authority is cited for this unique argument, and we are aware of none.

■■ We cannot equate the denial of the right to bail with the imposition of punishment. Quite to the contrary, the supreme court of this State has held the object of bail before conviction "is to make certain the defendant's appearance in court * * *." (*People ex rel. Hemingway v.*

*Elrod* (1975), 60 Ill. 2d 74, 81, 322 N.E.2d 837.) The rules of the supreme court in this regard provide that "defendant may be admitted to bail" after conviction by a judge of the trial or reviewing court. (Ill. Rev. Stat. 1979, ch. 110A, par. 609(b).) It appears to us that the denial of bail does not constitute and has no relationship to punishment for crime. Accordingly, we conclude this record presents no problem of double jeopardy.

The judgments appealed from are accordingly affirmed.

Judgments affirmed.

McGLOON and O'CONNOR, JJ., concur.