THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES COKLEY, Defendant-Appellant.

First District (6th Division)    No. 1—02—0701

Opinion filed March 12, 2004.—Rehearing denied March 30, 2004.

Michael J. Pelletier and Yasemin Eken, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Mary L. Boland, and Brian J. Boersma, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GALLAGHER delivered the opinion of the court:

Following a jury trial, defendant James Cokley was convicted of residential burglary and possession of a controlled substance and was sentenced to eight years and one year in prison, respectively, with those sentences to be served concurrently. On appeal, defendant contends that: (1) his trial counsel was ineffective in failing to move for separate trials on the two charges against defendant; (2) trial counsel also was ineffective in failing to file a motion to quash defendant's arrest and suppress evidence because defendant was arrested without a warrant and police lacked probable cause to arrest him; and (3) the trial court excluded relevant testimony that supported defendant's alibi and his claim that his inculpatory statement was coerced. Based on our resolution of the second issue, we reverse the judgment of the trial court and remand for retrial.

The State charged defendant with committing a residential burglary on February 12, 2001, and with possessing heroin on March 18, 2001. Defendant was tried simultaneously on both counts. At trial, Henry Barsch, a Chicago police officer whose duties then included crime pattern investigation and monitoring narcotics activity, testified that on February 12, 2001, he arrived home at his condominium at 3720 West 111th Street in Chicago. Barsch left home at about noon, leaving his weapon on a desk and locking the door behind him. When Barsch returned at about 2:30 p.m., he noticed that his gun was gone and subsequently discovered that a leather jacket, about $120 in cash and some of his wife's jewelry also were missing. Barsch observed pry marks on the door to his unit and on the building's back door.

Barsch testified that on March 18, 2001, he and a partner were performing surveillance on 8755 South Crandon in response to a stop order for defendant relating to the burglary of Barsch's residence. Barsch explained that a stop order alerts officers to hold an individual for questioning regarding an offense should that person be stopped for another reason. A license plate check of a maroon Toyota Camry parked on the street in front of 8755 South Crandon indicated that the car was registered to defendant at that address.

Barsch testified that defendant left 8755 South Crandon and retrieved a Crown Royal bag from the Camry. Barsch and other officers approached defendant, took the bag from him and found that it contained what was later stipulated to be .4 grams of heroin. On cross-examination, Barsch testified that his district did not include 8755 South Crandon but that his surveillance was in response to the stop order for defendant. Chicago police officer Katalinic[1] testified that after he and other officers recovered the Crown Royal bag from defendant, defendant was arrested and taken to the 4th District police station.

Suzanne Deane testified that she lived in a second-floor condominium at the back of Barsch's building. On February 12, 2001, Deane was sitting in her living room near a sliding glass door to her balcony, which overlooked the parking lot. She saw a man drive a maroon Toyota Camry into the lot and back the car into a parking space. Deane identified defendant in court as the driver and sole occupant of the Camry.

Deane testified that defendant got out of the car and looked up at the building's top floors. Defendant walked toward the building; however, Deane could not see if he entered the building because the building entrance is directly under her balcony. Deane also did not see

[1]The record does not indicate Officer Katalinic's first name.

defendant leave the building but noted at about 2:30 or 3 p.m. that the maroon Camry was gone. About one week later, Deane identified defendant in a six-picture police photo array. She also selected defendant in a six-man police lineup the day after his drug arrest.

On cross-examination, Deane stated that during her preliminary hearing testimony, she did not describe the maroon car as a Camry. She said defendant arrived at her building between 1:45 and 2:15 p.m. She did not see anything in defendant's hands. On redirect examination, Deane said that defendant wore an overcoat that extended past his knees. Deane said she was not asked at the preliminary hearing what type of car defendant was driving.

Chicago police detective Susan Joyce testified that no usable fingerprints were recovered from Barsch's residence. Detective Joyce interviewed Deane on February 15 and again on February 27, when Deane identified defendant in a photo array. The detective testified that as a result of Deane's identification, an investigative alert was issued, which informed officers that defendant was wanted for questioning in the residential burglary investigation.

Detective Joyce interrogated defendant after he appeared in the March 19 lineup. She informed defendant of his *Miranda* rights, which defendant indicated that he understood, and told him he had been positively identified in the lineup. Defendant then admitted to the burglary, stating that he and a man he called Kiki drove to 3720 West 111th Street in his Toyota because Kiki intended to commit a burglary there. Defendant and Kiki entered the building after prying open the building's back door. Kiki entered a unit on an upper floor and remained there for about 20 minutes while defendant acted as a lookout on the first floor. Defendant said Kiki returned with a leather bag containing a gun and some jewelry and Kiki gave him $100.

At the close of the State's case, defense counsel moved for a directed verdict on the residential burglary count. Stating that defendant did not contest the drug charge, defense counsel argued that the testimony of Barsch and Deane was insufficient to show that defendant committed residential burglary and that defendant's purported confession conflicted with Deane's account that she saw defendant enter the building alone. The trial court denied the defense's motion for a directed verdict.

The defense presented alibi testimony from defendant and Johnny Johnston, his manager at United Parcel Service (UPS) in Hodgkins. Johnston testified that defendant worked as a utility person, cleaning trailers and equipment and performing miscellaneous tasks. Johnston stated that defendant's February 12, 2001, timecard indicated that defendant began work that day at 5:47 a.m. and took a lunch break

from 11:30 a.m. to noon. The last entry on defendant's timecard showed that defendant started his last task at 2:08 p.m. and ended at 2:30 p.m. Johnston stated that an employee's user identification and password were needed to make such entries.

On cross-examination, Johnston acknowledged that defendant's timecard showed that an alteration was made to the entry that indicated he finished a job at noon; the card was changed to show that defendant completed a task at 11:30 a.m. Johnston said he did not monitor whether timecard entries corresponded with the work that employee was doing or when the employee finished a job. He said employees could make entries on each other's timecards if they exchanged passwords. On redirect, defense counsel asked Johnston if employees were penalized for not doing the work indicated on their timecard. The State objected, and the trial court sustained the objection. Counsel asked if defendant was penalized on February 12, 2001, for taking a longer lunch than shown on his timecard. The court again sustained the State's objection.

Defendant testified that he lived at 8755 South Crandon. Defendant admitted to possessing heroin on March 18, 2001, and stated that he had served two years of probation for a previous drug conviction. When asked if he "remembered the events of February 12, 2001," defendant replied "not really" because it was "just another day." Defendant denied participating in the burglary of Barsch's residence, stating that he was at work at the time. He stated he had never been to 3720 West 111th Street until recently when, at his attorney's request, defendant drove there from the UPS building to see how long it took to travel between those locations. The trip took about 22 minutes. Defendant said that while working at UPS, he wore a blue shirt, dark blue pants, work boots and safety glasses. He said he created his computer password and no one else knew it.

Defendant testified that he confessed to the burglary "under coercion." He said that after Detective Joyce interviewed him about the burglary, he spoke to a Federal Bureau of Investigation (FBI) agent whose name he could not recall. Defendant said he did not write out or sign a statement for Detective Joyce but rather that the detective was "feeding [him] lines" and he "just kind of agreed with what she was saying." When asked why he confessed, defendant said he thought he would be charged with a federal crime.

On cross-examination, defendant stated that he owned a maroon Toyota Camry. He admitted possessing heroin at the time of his arrest but denied that it was in a Crown Royal bag. Defendant said Detective Joyce and the FBI agent told him certain facts to include in his confession but that he offered other facts on his own. The defense rested.

The jury found defendant guilty of residential burglary and possession of a controlled substance. In his motion for a new trial, defendant argued that the trial court prevented him from offering testimony that he believed the officers who took his inculpatory statement were coercive. The trial court denied defendant's motion and, after considering factors in aggravation and mitigation, sentenced defendant to eight years in prison for the residential burglary and a concurrent one-year sentence for possession of a controlled substance.

On appeal, we first address defendant's contention that his trial counsel was ineffective for failing to file a motion to quash his arrest and suppress evidence. Defendant contends that when police arrested him on March 18 outside his home, the officers lacked probable cause to arrest him. He argues that the officers did not have sufficient evidence to reasonably believe he had committed a crime; rather, via the stop order, they knew only that defendant was seen in the parking lot of Barsch's building at about the time the burglary occurred. Defendant claims his counsel's failure to raise this issue at trial was unreasonable and that because the police arrested him without a warrant or probable cause, the heroin, the lineup identification and his inculpatory statement must be suppressed as the fruit of his illegal arrest. Defendant asks this court to reverse his convictions and remand his case for a new trial or, in the alternative, a suppression hearing at which the trial court can consider further evidence on the legality of his arrest.

The State responds that because defense counsel did not challenge the circumstances surrounding defendant's arrest and move to quash the arrest and suppress evidence, prosecutors lacked the opportunity to present in the trial court all of the evidence relevant to the issue of probable cause. Absent such evidence, the State contends, this court cannot determine whether defense counsel's decision was unreasonable. Nevertheless, the State asserts that Deane's testimony and the stop order constituted probable cause for the officers to arrest defendant and argues that this court should presume defense counsel's performance was reasonable and that the decision not to file the motion amounted to trial strategy.

However, defendant replies that aside from Deane's testimony identifying him in the parking lot, no evidence linked him to the burglary of Barsch's residence. He asserts that because Deane's testimony does not establish probable cause for his arrest, a reasonable probability existed that a motion to quash his arrest and suppress evidence would have been successful, thus leaving no evidence to support either conviction.

■ To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052

(1984), a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defendant such that the result of the proceeding would have been different. Proof that the defendant was prejudiced by counsel's deficient performance requires an affirmative showing of a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. Counsel's decision not to file a motion to quash a defendant's arrest and suppress evidence does not automatically constitute incompetence because such a decision is traditionally viewed as one of trial strategy, and a defendant must overcome the strong presumption that counsel's actions were the result of that strategy and not an indication of incompetence. *People v. Little*, 322 Ill. App. 3d 607, 610-11, 750 N.E.2d 745, 749-50 (2001); see also *People v. Rodriguez*, 312 Ill. App. 3d 920, 925, 728 N.E.2d 695, 702 (2000). To support a conclusion that defense counsel was ineffective in failing to file a motion to quash and suppress, a defendant must show that a reasonable probability exists that the motion would have been granted and also that the outcome of the trial would have been different had the trial court granted the motion. *Little*, 322 Ill. App. 3d at 611, 750 N.E.2d at 750.

■ Probable cause exists if a police officer has knowledge of facts which would lead a reasonable person to believe that a crime has been committed and that the person arrested committed the offense. *People v. Moody*, 94 Ill. 2d 1, 7, 445 N.E.2d 275, 278 (1983), citing *Dunaway v. New York*, 442 U.S. 200, 208 n.9, 60 L. Ed. 2d 824, 833 n.9, 99 S. Ct. 2248, 2254 n.9 (1979). While this standard requires more than mere suspicion, an arresting officer is not required to possess evidence sufficient to convict. *Moody*, 94 Ill. 2d at 7, 445 N.E.2d at 278; *People v. Aguinaga*, 231 Ill. App. 3d 153, 173, 598 N.E.2d 984, 997 (1992); see also *Michigan v. DeFillippo*, 443 U.S. 31, 36, 61 L. Ed. 2d 343, 349, 99 S. Ct. 2627, 2631 (1979) ("We have made clear that the kinds and degree of proof and the procedural requirements necessary for a conviction are not prerequisites to a valid arrest"). Whether probable cause exists is a commonsense, practical determination to be made upon examination of the totality of the circumstances presented. *Illinois v. Gates*, 462 U.S. 213, 233, 76 L. Ed. 2d 527, 545, 103 S. Ct. 2317, 2329 (1983). Moreover, "[t]he inquiry must focus on what was done and known by the police, not on what was believed, what the facts objectively viewed add up to, not what the officer on the scene believed they added up to." *Moody*, 94 Ill. 2d at 10, 445 N.E.2d at 279.

In the instant case, defendant was the subject of a stop order resulting from Deane's identification of defendant in a police photo ar-

ray and Deane's statement to police that she saw defendant in the parking lot of the building where the residential burglary occurred during the approximate time of the offense. The State contends that the totality of the evidence presented supported a finding of probable cause and argues that the stop order was "highly probative of probable cause," citing *People v. Spicer*, 163 Ill. App. 3d 81, 516 N.E.2d 491 (1987). However, while the presence of a stop order is relevant to an analysis of whether probable cause existed to arrest, *Spicer* does not stand for the proposition that such an investigative alert, without more, is sufficient to support a finding of probable cause. In *Spicer*, police issued a stop order for the defendant, and the defendant contested the legality of his arrest because police entered his home without a warrant, without consent and lacking exigent circumstances. *Spicer*, 163 Ill. App. 3d at 86, 516 N.E.2d at 495. However, the defendant conceded that probable cause existed for his arrest, making *Spicer* of dubious value to a determination of the weight of a stop order in establishing probable cause. *Spicer*, 163 Ill. App. 3d at 87, 516 N.E.2d at 495.

■ Defendant calls our attention to an appellate court decision explicitly holding that a stop order, in and of itself, is not dispositive of whether probable cause exists to support an arrest. In *People v. Simpson*, 129 Ill. App. 3d 822, 828-29, 473 N.E.2d 350, 355 (1984), police issued a stop order for the defendant following the victim's death from a gunshot wound. About two months later, after the defendant was arrested for shoplifting and questioned about the homicide, he confessed to shooting the victim. *Simpson*, 129 Ill. App. 3d at 829, 473 N.E.2d at 355. On appeal, the defendant argued that he was not arrested on the basis of a warrant but only after police issued an internal stop order. *Simpson*, 129 Ill. App. 3d at 830, 473 N.E.2d at 356. This court upheld the trial court's finding that probable cause existed to arrest the defendant based on a police officer's testimony that the defendant had threatened the victim with death or serious bodily harm, as well as the fact that the defendant gave police a false name and birth date when he was arrested for shoplifting. *Simpson*, 129 Ill. App. 3d at 830, 473 N.E.2d at 356. However, the appellate court noted that the trial court correctly concluded that "the officers' reliance upon a police stop order was not dispositive of whether probable cause supported the defendant's arrest for homicide." *Simpson*, 129 Ill. App. 3d at 831, 473 N.E.2d at 356.

Likewise, in other cases analyzing the significance of police stop orders in establishing probable cause, the State has offered evidence other than the stop order to support probable cause findings, and it is particularly noteworthy that the additional proof was primarily elicited

at pretrial suppression hearings. See *People v. White*, 134 Ill. App. 3d 262, 479 N.E.2d 1121 (1985) ("entirety of the record," including defendant's suspicious actions, information from anonymous tip and confidential informant, and advisory from neighboring police department that defendant was wanted for investigation constituted probable cause to arrest); *People v. Richmond*, 84 Ill. App. 3d 1017, 406 N.E.2d 135 (1980) (victims of attempted murder and armed robbery identified defendant after viewing about 400 photographs in police collection); *People v. Green*, 88 Ill. App. 3d 929, 410 N.E.2d 1003 (1980) (patrol officer who recognized defendant and stopped defendant's car in accordance with stop order following gas station robbery saw gun in plain view on rear seat); *People v. Harper*, 16 Ill. App. 3d 252, 305 N.E.2d 680 (1973) (after issuing stop order, police received anonymous phone call that defendant was one of two men "wanted for numerous robberies" and learned via internal check that defendant was wanted for aggravated battery). See also *People v. Beard*, 35 Ill. App. 3d 725, 342 N.E.2d 343 (1976).[2]

Having considered that authority and the circumstances of this case, we reject the State's argument that the stop order, by itself, provided probable cause for defendant's arrest. We note that no facts were presented as to the internal police procedures that preceded the issuance of the stop order in this case, and in another situation, the facts prompting a police stop order could constitute probable cause to arrest a suspect. However, the particular facts presented to the trial court in this case were insufficient to establish probable cause to arrest defendant.

■ Turning to defendant's ineffective assistance argument, the first prong of *Strickland* requires a showing that defense counsel's performance "fell below an objective standard of reasonableness," and a defendant is required to overcome the strong presumption that the challenged action was the result of sound trial strategy and not the result of incompetence. See *Strickland*, 466 U.S. at 688, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064; *People v. Spann*, 332 Ill. App. 3d 425, 430, 773 N.E.2d 59, 64 (2002). We agree with defendant that in this case, a reasonable probability exists that a motion to quash defendant's arrest and suppress evidence would have been granted. As discussed

---

[2]The Illinois Supreme Court has not faced the issue of the weight of a police stop order or investigative alert in determining probable cause. In *People v. King*, 109 Ill. 2d 514, 536-37, 488 N.E.2d 949, 961 (1986), although the defendant contended that the stop order in that case was not based on probable cause, the supreme court held the defendant waived that issue by failing to raise it at the suppression hearing or at trial.

above, the stop order alone did not provide police with probable cause to arrest defendant for residential burglary. The basis for the stop order was Deane's statement to police that she saw defendant in the parking lot of her building at about the time the crime occurred. No testimony was offered that Deane saw defendant carrying items from the building or that prior to defendant's arrest, he was seen in possession of the items that Barsch reported missing.

It is significant that in the cases cited above, the facts were further developed through testimony presented at hearings on defense motions to quash the defendants' arrests and suppress evidence. The State asserts that in the absence of a suppression hearing in the trial court, the record before this court lacks all of the evidence relevant to a determination of probable cause. While we do not speculate as to the evidence that the State may present on remand or comment on the ultimate success of such a motion, we conclude that, based on the record that we have in this case, a reasonable probability exists that a motion to quash defendant's arrest and suppress evidence would have been successful.

Turning to Strickland's second prong, a defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different; a "reasonable probability" is defined as a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. Here, defendant was clearly prejudiced by defense counsel's failure to challenge the circumstances of his arrest. Pursuant to the exclusionary rule, evidence obtained as a result of an illegal search cannot be introduced against the defendant, absent some exception to that rule. *Wong Sun v. United States*, 371 U.S. 471, 484-85, 9 L. Ed. 2d 441, 453-54, 83 S. Ct. 407, 416 (1963). See also *Costello v. United States*, 365 U.S. 265, 5 L. Ed. 2d 551, 81 S. Ct. 534 (1961); *Brown v. Illinois*, 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254 (1975). Therefore, had the trial court granted the motion and found that defendant's arrest was illegal because the police lacked probable cause, the State would have been barred from introducing evidence flowing from that arrest, namely, the heroin in the Crown Royal bag. See *People v. Abrams*, 48 Ill. 2d 446, 455, 271 N.E.2d 37, 43 (1971). The State therefore would have lacked any evidence to support a charge of possession of a controlled substance. Likewise, Deane's identification of defendant in a lineup the day after his arrest, as well as defendant's inculpatory statement, also could be suppressed, thus eliminating the proof necessary for defendant's residential burglary conviction. Because the State offered no other evidence of defendant's guilt, defense counsel's failure to challenge the circumstances of

defendant's arrest resulted in prejudice to defendant. For those reasons, we find defendant has satisfied both prongs of *Strickland* and that his trial counsel was ineffective for failing to move to quash defendant's arrest and suppress evidence.

The State asserts that the proper forum for defendant's ineffective assistance arguments is a postconviction petition. Defendant replies that this court is well-suited to review his ineffective assistance claim, citing *People v. Little*, 322 Ill. App. 3d 607, 750 N.E.2d 745 (2001), and he argues that the record contains sufficient facts to determine whether his counsel was ineffective in failing to file a motion to quash his arrest and suppress evidence. We agree with *Little*'s rejection of the argument that a postconviction proceeding is the best venue to decide a defendant's ineffective assistance claim:

> "The trial court's concern in any postconviction proceeding instituted on defendant's behalf would involve the same issue confronted by us here, namely, whether defendant's trial attorney was ineffective for not pursuing a motion to quash and suppress evidence. Any evidentiary hearing on such a postconviction petition would be aimed at determining the reasonableness of counsel's decision in electing not to pursue a pretrial suppression motion and not, as intimated by the State, conducted for purposes of determining whether the arresting officers acted with sufficient probable cause. Thus, the factual record regarding the information known and relied upon by the arresting officers would be no more developed in a postconviction proceeding than it is here. Additionally, to conclude that defendant should wait to raise his ineffective assistance claim in a collateral proceeding would unfairly subject defendant to the risk of having his contention waived or barred by *res judicata*." *Little*, 322 Ill. App. 3d at 613-14, 750 N.E.2d at 752.

For the reasons enunciated in *Little*, we disagree with the State that defendant's ineffective assistance claim is best resolved in a subsequent postconviction proceeding.

Defendant asks this court to remand for a new trial or, in the alternative, for the trial court to hold a suppression hearing on the legality of his arrest. Having considered those forms of relief, we conclude that because defendant was deprived of the effective assistance of counsel at trial, the appropriate disposition is to reverse the judgment of the trial court and remand for a new trial. *People v. Smith*, 321 Ill. App. 3d 523, 533, 747 N.E.2d 1081, 1091 (2001); *People v. Young*, 306 Ill. App. 3d 350, 356, 716 N.E.2d 312, 316 (1999) (where defendant does not receive effective assistance of counsel but evidence

is sufficient to convict, proper remedy is to reverse defendant's conviction and remand for new trial.)[3]

Accordingly, for all of the foregoing reasons, the judgment of the trial court is reversed and this case is remanded for retrial. In light of that relief, we need not consider defendant's remaining contentions.

Reversed and remanded.

O'MARA FROSSARD, P.J., and FITZGERALD SMITH, J., concur.

---

[3]We note that defendant does not challenge the sufficiency of the evidence to convict him. To allay any double jeopardy concerns should the trial court order the suppression of the heroin, the identification of defendant, and his inculpatory statement and grant defendant a new trial, we find that the evidence presented to the trial court in this case was sufficient to convict defendant beyond a reasonable doubt. See *People v. Mink*, 141 Ill. 2d 163, 173-74, 565 N.E.2d 975, 979-80 (1990) ("The double jeopardy clause precludes the State from retrying a defendant once a reviewing court has determined that the evidence introduced at trial was legally insufficient to convict"). See also *Young*, 306 Ill. App. 3d at 356, 716 N.E.2d at 316; *People v. Goff*, 299 Ill. App. 3d 944, 949, 702 N.E.2d 299, 302 (1998) (case may be remanded for retrial only if prosecution at first trial presented evidence sufficient to sustain conviction beyond reasonable doubt). However, should the trial court on remand order the suppression of the above-described evidence, the State clearly would require other proof to try defendant again for these offenses.